1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7                                    DISTRICT OF NEVADA

8                                              * * *

9    TIFFANY SARGANT, BAILEY                    )
     CRYDERMAN, HUONG ("ROSIE")                 )
10   BOGGS, and JACQULYN WEIDERHOLT,            )
     on behalf of themselves and others similar )
11   situated,                                  )
                                                )      3:13-CV-00453-LRH-WGC
12                 Plaintiffs,                   )
                                                )
13   v.                                         )      ORDER
                                                )
14   HG STAFFING, LLC; MEI-GSR                  )
     HOLDINGS, LLC d/b/a GRAND SIERRA           )
15   RESORT; and DOES 1 through 50, inclusive,  )
                                                )
16                 Defendants.                  )
                                                )

17

18        Before the Court is Plaintiffs Tiffany Sargant, Bailey Cryderman, Huong ("Rosie") Boggs,

19   and Jacqulyn Wiederholt's Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b).

20   Doc. #18.[1]  Defendants HG Staffing, LLC and MEI-GSR Holdings, LLC d/b/a Grand Sierra Resort

21   filed an Opposition (Doc. #19), to which Plaintiffs replied (Doc. #21).

22   **I.       Factual Background**

23        On June 21, 2013, Sargant and Cryderman filed their original collective and class action

24   Complaint against Defendants in the Second Judicial District Court for the State of Nevada in and

25   for the County of Washoe.  Doc. #1, Ex. A.  On August 22, 2013, Defendants filed a Petition for

26
     _____

          [1] Refers to the Court's docket number.

1    Removal.  Doc. #1.  On September 16, 2013, Plaintiffs filed the operative First Amended

2    Complaint ("FAC") before the Court, adding two new named Plaintiffs, Boggs and Wiederholt.

3    Doc. #10.  Plaintiffs allege various causes of action for unpaid wages on behalf of themselves and

4    all similarly situated individuals under both the Fair Labor Standards Act ("FLSA") and the Nevada

5    Revised Statutes.  *See* Doc. #10. April 8, 2014

6           On October 23, 2013, Plaintiffs moved for conditional certification of a collective action

7    with respect to their FLSA claims for (1) failure to pay wages for all hours worked in violation of

8    29 U.S.C. § 201, et. seq., (2) failure to pay overtime in violation of 29 U.S.C. § 207, and (3) failure

9    to pay overtime at the correct rate in violation of 29 U.S.C. § 207.[2]  *See* Doc. #18, pp. 3-4.

10   Additionally, Plaintiffs seek an order directing that persons similarly situated to Plaintiffs be given

11   notice of the pendency of this action and an opportunity to file written consents with the Court to

12   join the action as party plaintiffs and for other such associated relief, including a toll of the statute

13   of limitations.  *See* Doc. #18, p. 1.  On November 8, 2013, Defendants filed an Opposition.  Doc.

14   #19.  On November 13, 2013, Plaintiffs filed an Amended Reply.  Doc. #21.

15   **II.    Legal Standard**

16          The FLSA provides that a collective action may be maintained where the claimants are

17   "similarly situated."  29 U.S.C. § 216(b); *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp.

18   2d 883, 902 (C.D. Cal. 2009).  Claimants must opt-in to the litigation because "[n]o employee shall

19   be a party plaintiff to any such action unless he gives his consent in writing to become such a party

20   and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  The

21   requirements for class action certification under Federal Rule of Civil Procedure 23(a) do not apply

22   to claims arising under the FLSA.  *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977).

23   Instead, the majority of courts in the Ninth Circuit and the District of Nevada have adopted a two-

24

25          [2] Plaintiffs are pursuing their state law causes of action as a class action pursuant to Federal

26   Rule of Civil Procedure 23.  Plaintiffs do not seek certification of the class for these claims at this time.

1  step approach to certification of collective actions pursuant to section 216(b).  *See Sarviss*, 663 F.

2  Supp. 2d at 903 (collecting cases); *see also Lewis v. Nevada Property 1, LLC*, No. 2:12-cv-01564-

3  MMD-GWF, 2013 WL 237098, at *7 (D. Nev. Jan. 22, 2013); *Lucas v. Bell Trans*, No. 2:08-cv-

4  01792-RCJ-RJJ, 2010 WL 3895924, at *3-4 (D. Nev. Sept. 30, 2010); *see also* Newberg on Class

5  Actions § 24:3 (4th ed. 2008) ("[m]ost courts have interpreted § 216(b) as requiring an analysis of

6  whether plaintiffs are 'similarly situated' at two stages in the litigation: when notice to prospective

7  class members is initially sought and then following discovery").

8         At the initial stage of the inquiry, "the court considers whether to certify a collective action

9  and permit notice to be distributed to putative class members." *Sarviss*, 663 F. Supp. 2d at 903

10  (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).  A fairly

11  lenient standard applies and "typically results in 'conditional class certification' of a representative

12  class." *Lucas*, 2010 WL 3895924, at *4.  Specifically, "[a] named plaintiff seeking to create a

13  § 216(b) opt-in class need only show that his/her position is similar, but not identical, to the

14  positions held by putative class members." *Lewis*, 2013 WL 237098, at *7.  In order to

15  demonstrate that the proposed opt-in plaintiffs are similarly situated, a named plaintiff need only

16  make "substantial allegations that the putative class members were subject to a single decision,

17  policy, or plan that violated the law." *Id.* (citing *Mooney v. Aramco Services, Co.*, 54 F.3d 1207,

18  1214 n. 8 (5th Cir. 1995)).  In making a determination as to whether certification is appropriate at

19  the initial stage, "[t]he court relies primarily on the pleadings and any affidavits submitted by the

20  parties." *Id.* (quoting *Davis v. Westgate Planet Hollywood Las Vegas*, No. 2:08-cv-00722-RCJ-

21  PAL, 2009 WL 102735, at *9 (D. Nev. Jan. 12, 2009)) (internal quotation marks omitted).

22         The second stage of the inquiry takes place at the conclusion of discovery.[3]  *Sarviss*, 663 F.

23  Supp. 2d at 903.  At that point, courts conduct a more exacting review of whether the putative class

24

25         [3]  To trigger this inquiry, the party opposing class certification must move to decertify the class.
*Davis*, 2009 WL 102735, at *9.

26

1    members are "similarly situated" for purposes of certification under section 216(b). *Id.*

2    Specifically, "the court makes 'a factual determination regarding the propriety and scope of the

3    class.'" *Davis*, 2009 WL 102735, at *9 (quoting *Leuthold v. Destination America, Inc.*, 224 F.R.D.

4    462, 466 (N.D. Cal. 2004)).  In making its factual determination, courts consider "(1) the disparate

5    factual and employment settings of the individual plaintiffs; (2) the various defenses available to

6    the defendants with respect to the individual plaintiffs; and (3) fairness and procedural

7    considerations." *Id.* (quoting *Leuthold*, 224 F.R.D. at 467).

8    **III.    Discussion**

9          Here, Plaintiffs bring their FLSA causes of action on behalf of "[a]ll current and former

10   non-exempt hourly paid employees who were employed by Defendants [during the relevant time

11   period]." Doc. #10, ¶30.  As to conditional certification of a collective action, Plaintiffs contend

12   that there are "two common plan[s], policies, or practices that require notice to be sent out to other

13   similarly situated employees: (1) Defendants' policy of requiring non-exempt hourly employees to

14   work without being paid (i.e., off-the-clock) and (2) Defendants' policy of refusing to include

15   commissions, piece rates, and/or other non-discretionary payments into employees' regular rate of

16   pay for determining the correct overtime rate of pay of all overtime hours worked." Doc. #18, p. 5.

17   In support thereof, Plaintiffs submitted sworn declarations detailing their personal experiences and

18   observations while working at the Grand Sierra Resort ("GSR").

19         First, Plaintiffs submitted evidence in support of their allegation that Defendants had a

20   policy of requiring non-exempt hourly employees to work without being paid.  Specifically,

21   "Defendants maintained a policy of requiring employees to clock in prior to their regularly schedule

22   shifts but shaved, or rounded, the employees' hours to their ordinary start time." *See, e.g.*, Doc.

23   #18-3, Boggs Decl. at ¶8; Doc. #18-6, Wiederhold Decl. at ¶6; Doc. #18-5, Sargant Decl. at ¶25.

24   Moreover, as a supervisor, Sargant had firsthand knowledge of Defendants' policies and was

25   charged with enforcing them.  Doc. #18-5, Sargant Decl. at ¶¶4, 12-13.  In addition, Defendants

26   routinely required employees to work without recording their hours in order to limit the

1    accumulation of overtime hours. *See, e.g.*, Doc. #18-5, Sargant Decl. at ¶¶7-8, 12-13, 22; Doc.

2    #18-4, Cryderman Decl. at ¶¶8-9, 14, 19.  Second, Plaintiffs submitted evidence that Defendants

3    had a policy of refusing to include commissions, piece rates, and/or other non-discretionary

4    payments into employees' regular rate of pay for determining the correct overtime rate of pay of all

5    overtime hours worked. *See, e.g.*, Doc. #18-5, Sargant Decl. at ¶26; Doc. #18-4, Cryderman Decl.

6    at ¶¶2-5.  To the extent Plaintiffs' allegations are based on personal observation and experience, the

7    Court finds they are sufficient to establish that Plaintiffs' positions are similar to that of putative

8    class members.  Accordingly, the Court concludes that conditional certification of a collective

9    action is appropriate for each of the aforementioned plans, policies, or practices.

10          Defendants' argument that certification should be denied for failure to comply with the

11   grievance procedure set forth in the Collective Bargaining Agreement ("CBA") is without merit.  In

12   *Barrentine v. Arkansas-Best Freight System, Inc.*, the Supreme Court clearly distinguished between

13   claims "based on rights arising out of the [CBA]," resolution of which should be left to the

14   procedures set forth in the CBA, and claims based on rights arising out of a statute designed to

15   provide minimum substantive guarantees to individual workers." 450 U.S. 728, 737 (1981).  Like

16   the petitioners in *Barrentine*, "the FLSA rights [Plaintiffs] seek to assert in this action are

17   independent of the collective-bargaining process.  They devolve on [Plaintiffs] as individual

18   workers, not as members of a collective organization." *Id.* at 745.  Accordingly, they are not

19   waivable or otherwise subject to the terms of the CBA.  *See id.* at 740; *see also Albertson's, Inc. v.*

20   *United Food & Commercial Workers Union*, 157 F.3d 758, 761 (9th Cir. 1998) (holding

21   "employees covered by a collective bargaining agreement are entitled to take their FLSA claims to

22   court regardless of whether those claims may also be covered by the grievance-arbitration

23   procedure").

24          Moreover, Defendants' argument that certification should be denied because Plaintiffs'

25   claims are subject to Nevada Revised Statute 608.018(3)(e), which exempts employees covered by

26   a CBA from the generally applicable overtime requirements, is misplaced.  The present Motion for

1  Circulation of Notice concerns only Plaintiffs' FLSA claims, not Plaintiffs' Nevada wage and hour

2  claims.  As Plaintiffs gladly admit, their Nevada wage and hour claims are not subject to the "opt-

3  in" procedure under the FLSA; rather, they are brought pursuant to the "opt-out" procedure of

4  Federal Rule of Civil Procedure 23.  Accordingly, Nevada Revised Statute 608.018(3)(e) is

5  irrelevant at this time.

6  **IV.    Form of Notice**

7       The Court's purpose in overseeing the notification process is to ensure that notice is timely,

8  accurate, and informative.  *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  The

9  United States Supreme Court has abstained from reviewing the contents of a proposed notice under

10  the FLSA, noting that such "details" should be left to the broad discretion of the trial court.  *Id.* at

11  170.

12       Here, Defendants did not object to the content of Plaintiffs' Proposed Notice of Pendency of

13  FLSA Collective Action Lawsuit Against GSR ("Proposed Notice")[4] (Doc. #21-2) and Consent to

14  Join (Doc. #18-2).  Moreover, as Plaintiffs point out, their Proposed Notice is based in large part

15  upon a form approved for use in other cases by this court and another court in this district.  *See*

16  *Morales v. Allied Building Crafts*, 2:04-CV-01365-LRH-LRL, Doc. #74 (Oct. 6, 2005); *Westerfield*

17  *v. Fairfield Resorts, Inc.*, 2:05-CV-01264-JCM-PAL, Doc. #37 (Mar. 29, 2006).  Accordingly, the

18  Court adopts Plaintiffs' Proposed Notice and Consent to Join, with the following minor edits:

19       • Under heading "<u>DESCRIPTION OF THE LAWSUIT</u>," 2nd ¶: "Defendant denies

20          Plaintiffs' claims and <u>denies</u> that it is liable ~~to~~ for any damages resulting from this

21          lawsuit."

22       • Under heading "<u>YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT</u>," 2nd ¶: "If

23          you want to join this lawsuit, you must send the "<u>Consent to Join</u>" form to the Claims

24          Administrator . . . ."  "If you do not return the "Consent to Join" form [<u>identify specific</u>

25

26       [4] Plaintiffs submitted an Amended Notice to cure the inadvertent typographical mistakes
         noticed by Defendants.  *See* Doc. #21, pp. 4-5.

1   timeframe in which "Consent to Join" form must be returned], you may not be able to

2   participate in this lawsuit."

3   • Under the heading "EFFECT OF JOINING THIS SUIT," 3rd ¶: "However, the court

4   has jurisdiction to determine the reasonableness of any settlement with GSR,[5] and any

5   agreement concerning ~~the reasonableness of any~~ attorneys' fees and costs that are to be

6   paid to the Plaintiffs' counsel."

7   • Under the heading "EFFECT OF JOINING THIS SUIT," 4th ¶: "If Plaintiffs prevail in

8   this litigation, the attorneys for the class will request that the court either determine or

9   approve the amount of attorneys' fees and costs they are entitled to receive for their

10   services.  The FLSA provides only for attorneys' fees for the Plaintiffs, if successful,

11   and not for GSR.  Although, the court could award GSR attorneys' fees for misconduct

12   or other reasons not covered by the statute.

13   • Under the heading "STATUTE OF LIMITATIONS ON POTENTIAL CLAIMS": "If

14   the Plaintiffs cannot prove GSR acted willfully, the statute of limitations is two (2)

15   years."

16   • Under the heading "NO RETALIATION PERMITTED": ***"Participation in this lawsuit***

17   ***is not related to or affected by any offer of severance benefits or release you may have***

18   ***recently signed.***"

19   • Under the heading "FURTHER INFORMATION," 2nd ¶: "The court has taken no

20   position in this case regarding the merits of the Plaintiffs' claims or ~~of~~ the Defendant's

21   defenses."

22   **V.   Tolling of the Statute of Limitations**

23   Under the FLSA, the statute of limitations on each individual plaintiff's claim continues to

24   run until his or her consent to joinder is filed with the Court.  29 U.S.C. § 256.  Nevertheless, courts

25   _____

26   [5] Given that the strike-out symbol with a comma looks like a semicolon, the Court clarifies that
this edit is to remove the comma.

have found that section 256 is a merely a procedural limitation that may be tolled when equity

warrants. *See Partlow v. Jewish Orphans' Home of So. Cal., Inc.*, 645 F.2d 757, 761 (9th Cir.

1981), abrogated on other grounds by *Hoffman-La Roche*, 493 U.S. at 167, ("the FLSA does not bar

the district court-imposed suspension of the statute of limitations [where] such tolling is supported

by substantial policy reasons"). Because the delay on this Motion was not caused by the parties, the

Court finds that equity warrants that the statute of limitations be tolled for the time that has elapsed

while the present Motion has been pending before the Court.[6] *See Lucas*, 2010 WL 3895924, at *5

(granting plaintiffs' request to toll the statute of limitations where delay was not caused by the

parties); *see also Lee*, 236 F.R.D. at 200 (tolling the statute of limitations during the pendency of the

motion).

    IT IS THEREFORE ORDERED that Plaintiffs' Motion for Circulation of Notice Pursuant

to 29 U.S.C. § 216(b) (Doc. #18) is GRANTED.

    IT IS FURTHER ORDERED that the Notice and Consent to Join forms shall be approved

by the Court provided Plaintiffs incorporate the aforementioned editorial changes.

    IT IS FURTHER ORDERED that Plaintiffs shall translate the Notice and Consent into

Spanish within twenty-one (21) days of the issuance of this Order.

    IT IS FURTHER ORDERED that notice of this lawsuit shall be sent to all current and

former non-exempt hourly paid employees who were employed by Defendants at any time from

June 21, 2010, to the present.

    IT IS FURTHER ORDERED that, within twenty-one (21) days of the issuance of this Order,

Defendants shall provide Plaintiffs' counsel with a list in computer-readable format of: (a) the full

---

[6] Plaintiffs request that the statute of limitations also be tolled during the notice period. However, *Lucas* does not lend support for that proposition. Moreover, the case on which *Lucas* relies, *Lee v. ABA Carpet & Home*, explains that tolling is appropriate "[w]here parties are ordered . . . to suspend proceedings" or otherwise "prevented from obtaining legal relief." 236 F.R.D. 193, 199-200 (S.D.N.Y. 2006). Accordingly, the Court finds that such relief is not warranted under the circumstances.

name; (b) current home address or last known address; (c) telephone number; and (d) email address of each person who falls within the definition set forth in the above paragraph.  Plaintiffs shall treat this information as confidential and shall not disclose it to third parties.[7]

IT IS FURTHER ORDERED that, within twenty-eight (28) days of the issuance of this Order, Plaintiffs' counsel or a claims administration company that Plaintiffs' counsel selects to process the mailing and opt-in forms (hereinafter collectively referred to as "Claims Administrator") shall mail a Notice, a Consent to Join form, and a postage pre-paid envelope to each person identified on the list disclosed in the above paragraph.

IT IS FURTHER ORDERED that any person who wishes to opt into this lawsuit shall properly complete the Consent to Join form and return it to Plaintiffs' counsel.

IT IS FURTHER ORDERED that, in the event any package is returned undeliverable, the Claims Administrator shall, within fourteen (14) days thereafter, notify the Court and take the requisite steps to obtain an alternate address for that addressee and mail the notice package to that alternate address.  The Claims Administrator shall keep a record of: (a) the date on which any notice package is returned undeliverable; (b) the date on which the undeliverable notice package is sent to an alternate address; and (c) any updated addresses.

IT IS FURTHER ORDERED that Plaintiffs' counsel shall date-stamp and number each properly completed Consent to Join form and accompanying envelope that is received.  Plaintiffs' counsel shall send a copy of the Consent to Join forms it receives to Defendants' counsel on each Friday after the initial mailing.

///

///

----

[7] In the absence of legal authority requiring otherwise, the Court declines to require Defendants to disclose to Plaintiffs' counsel the Social Security numbers of each person who falls within the definition set forth in paragraph 2.  In the event Plaintiffs' counsel or the Claims Administrator is unable to locate a particular individual, the Court will address the issue on an individualized basis and take the necessary steps to ensure the protection of sensitive personal identification information.

1    IT IS FURTHER ORDERED that Plaintiffs' counsel shall file the list of people who timely

2  return their Consent to Join forms identified above and the timely Consent to Join forms with the

3  Court within thirty (30) days after their receipt, or earlier.  Plaintiffs' counsel shall retain a copy of

4  the list and the envelopes in which the Consent to Join forms were received.

5    IT IS FURTHER ORDERED that Plaintiffs' Motion for Oral Argument (#23) and Motion

6  for Status Conference (#32) are DENIED as moot.

7    IT IS SO ORDERED.

8    DATED this 6th day of May, 2014.

9

10  _____

11  LARRY R. HICKS
   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26