UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

* * *

TIFFANY SARGENT, BAILEY
CRYDERMAN, SAMANTHA L. IGNACIO
(formerly SCHNEIDER), VINCENT M.
IGNACIO, HUONG ("ROSIE") BOGGS, and
JACQULYN WIEDERHOLT on behalf of
themselves and all others similarly situated,

　　　Plaintiffs,

　v.

HG STAFFING, LLC; MEI-GSR
HOLDINGS, LLC d/b/a GRAND SIERRA
RESORT; and DOES 1 through 50, inclusive,

　　　Defendants.

3:13-CV-00453-LRH-WGC

ORDER

　　　Before the court is Plaintiff's Motion for Class Certification.  Doc. #144.[1]  Defendants

filed a Response (Doc. #161), to which Plaintiffs' replied (Doc. #167).  Defendants filed a

Motion for Leave to File Excess Pages for their Response to Plaintiff's Motion for Class

Certification.  Doc. #164.  Plaintiff's filed a Response (Doc. #165), to which Defendant's replied

(Doc. #166).  Additionally, Defendants' filed a Motion to Decertify FLSA Collective Action and

for Partial Summary Judgment on Plaintiffs' First Cause of Action.  Doc. #162.  Plaintiffs filed a

Response (Doc. #168), to which Defendants' replied (Doc. #169).

## I.　　Facts and Procedural History

　　　On June 21, 2013, Plaintiffs Tiffany Sargant ("Sargant") and Bailey Cryderman

("Cryderman") filed their original collective and class action Complaint against Defendants in

---

[1] Refers to the Court's docket number.

1

the Second Judicial District Court for the State of Nevada in and for the County of Washoe. Doc. #1, Ex. A.  On August 22, 2013, Defendants filed a Petition for Removal.  Doc. #1.  On June 13, 2014, Plaintiffs filed the operative Second Amended Complaint ("SAC") before the Court.  Doc. #47.

The SAC alleged nine causes of action: (1) Failure to Pay Wages for All Hours Worked in Violation of 29 U.S.C. § 201, et. seq; (2) Failure to Pay Overtime in Violation of 29 U.S.C. § 207; (3) Failure to Pay Overtime at the Correct Rate, 29 U.S.C. § 207; (4) Failure to Compensate for All Hours Worked in Violation of NRS 608.140 and 608.016; (5) Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250; (6) Failure to Pay Overtime in Violation of NRS 608.140 and 608.018; (7)  Failure to Timely Pay All Wages Due and Owing in Violation of NRS 608.140 and 608.020-.050; (8) Unlawful Chargebacks in Violation of NRS 608.140 and 608.100; and (9) Age Discrimination Violation of 29 U.S.C. § 621 and NRS 613.330.  On May 6, 2014, Plaintiffs' Fair Labor Standards Act ("FLSA") claims (first, second, and third causes of action) were conditionally certified.  Doc. #40.

On September 3, 2015, Plaintiffs filed a Motion for Class Certification as to their fourth, fifth, sixth, seventh, eighth, and ninth causes of action.  Doc. #144.  On November 4, 2015, Defendants filed their Response to Plaintiffs' Motion for Class Certification and a Motion to Decertify FLSA Collective Action and for Partial Summary Judgment on Plaintiffs' First Cause of Action.  Doc. #161 and 162.  On November 30, 2015, Plaintiffs filed a Reply in support of their Motion for Class Certification and their Response to Defendants' Motion for Decertification and Partial Summary Judgment.  Doc. #167 and 168.  On December 17, 2015, Defendants filed a Reply in support of their Motion for Decertification and Partial Summary Judgment.  Doc. #169.  On January 12, 2016, Defendants' Motion for Partial Summary Judgment was granted as to Plaintiff's fourth, sixth, seventh, and eighth causes of action.  Doc. #172.

///

///

///

2

## II.     Legal Standard

### A.  Class Certification

To qualify for class certification, the class must meet the requirements of Rule 23(a), and at least one requirement of Rule 23(b).  Fed. Judicial Center, *Manual for Complex Litigation* § 21.131 (4th ed. 2004); Fed. R. Civ. P. 23(a), (b).  The proponents of the class bear the burden of demonstrating that all the prerequisites for class designation are met.  *See In re No. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982).  "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (quotation marks and citation omitted).  Rule 23(a) sets forth four threshold requirements applicable to all class actions:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P 23(a).

The Supreme Court refers to these elements as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

In addition, Plaintiffs must satisfy the requirements under Rule 23(b)(1), (2), or (3) in order to maintain a class action.  Under Rule 23(b)(3)—the subsection chosen by Plaintiffs—certification is appropriate if the court finds that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### B.  Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to

1   judgment as a matter of law." Fed. R. Civ. P. 56(a).  In assessing a motion for summary

2   judgment, the evidence, together with all inferences that can reasonably be drawn therefrom,

3   must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec.*

4   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty.*

5   *Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).  A motion for summary judgment can be complete

6   or partial, and must identify "each claim or defense—or the part of each claim or defense—on

7   which summary judgment is sought." Fed. R. Civ. P. 56(a).

8        The party moving for summary judgment bears the initial burden of informing the court

9   of the basis for its motion, along with evidence showing the absence of any genuine issue of

10  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it

11  bears the burden of proof, the moving party must make a showing that no "reasonable jury could

12  return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

13  (1986).  On an issue as to which the nonmoving party has the burden of proof, however, the

14  moving party can prevail merely by demonstrating that there is an absence of evidence to support

15  an essential element of the non-moving party's case.  *Celotex*, 477 U.S. at 323.

16       To successfully rebut a motion for summary judgment, the nonmoving party must point

17  to facts supported by the record that demonstrate a genuine issue of material fact.  *Reese v.*

18  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).  A "material fact" is a fact "that

19  might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248.

20  Where reasonable minds could differ on the material facts at issue, summary judgment is not

21  appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material

22  fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict

23  for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of

24  evidence in support of the party's position is insufficient to establish a genuine dispute; there

25  must be evidence on which a jury could reasonably find for the party.  *See id.* at 252.

26  "[S]peculative and conclusory arguments do not constitute the significantly probative evidence

27  required to create a genuine issue of material fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th

28  Cir. 1982).

### C.  Decertification of a Collective Action

The FLSA authorizes collective actions against employers accused of violating the FLSA.  29 U.S.C. § 216(b).  Section 216(b) provides that "[a]n action ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated.  *See Anderson v. Cagle's*, 488 F.3d 945, 952 (11th Cir.2007).

Participants in a § 216(b) collective action must affirmatively opt into the suit. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  That is, once a plaintiff files a complaint against an employer, any other similarly situated employees who want to join must affirmatively consent to be a party and file written consent with the court.  *Albritton v. Cagle's*, 508 F.3d 1012, 1017 (11th Cir. 2007).

FLSA collective actions utilize a two-step process in the pretrial phase.  The first step of whether a collective action should be certified is the notice stage.  *Anderson*, 488 F.3d at 952–53; *Hipp v. Liberty Nat. Life Ins. Co*., 252 F.3d 1208, 1218 (11th Cir. 2001).  Here, a court determines whether other similarly situated employees should be notified.

A plaintiff has the burden of showing a "reasonable basis" for his claim that there are other similarly situated employees.  *See Anderson*, 488 F.3d at 952; *Grayson v. K Mart Corp*., 79 F.3d 1086, 1097 (11th Cir. 1996); *Haynes v. Singer Co*., 696 F.2d 884, 887 (11th Cir.1983).  The standard for determining similarity, at this initial stage, is "not particularly stringent."  *Hipp*, 252 F.3d at 1214.   The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion.  Nonetheless, there must be more than "only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores."  *Haynes*, 696 F.2d at 887.

This first step is also referred to as conditional certification since the decision may be reexamined once the case is ready for trial.  *Albritton*, 508 F.3d at 1014 (discussing *Hipp*'s first stage as "conditionally certifying the collective action"); *Anderson*, 488 F.3d at 952 (stating

district court certified collective action, "but only conditionally," noting the possibility of later decertifying once discovery is substantially over).

The second stage is triggered by an employer's motion for decertification. *Anderson*, 488 F.3d at 953. At this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity. *Id*. This second stage is less lenient, and the plaintiff bears a heavier burden. *Id*. (citing *Thiessen v. Gen. Elec. Capital Corp*., 267 F.3d 1095, 1103 (10th Cir. 2001)).

At this stage, as more legally significant differences appear amongst the opt-ins, it becomes less likely that the group of employees is similarly situated. *Id*. ("Exactly how much less lenient we need not specify, though logically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action."). In order to overcome the defendant's evidence, a plaintiff must rely on more than just "allegations and affidavits." *Id*. Because the second stage usually occurs just before the end of discovery, or at its close, the court likely has a more extensive and detailed factual record. *Id.*

There are a number of factors that courts should consider at the second stage, such as: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Thiessen*, 267 F.3d at 1103. Thus, at the second stage, "although the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions" and encompass the defenses to some extent. *Anderson*, 488 F.3d at 953 (citation and quotation marks omitted). For example, the court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly. *Id*. at 954 n. 8 (noting that all named plaintiffs were unionized but some opt-in plaintiffs were not, making the collective bargaining agreement defense applicable to some but not all plaintiffs). But ultimately, whether a collective action is appropriate depends largely on the factual question of whether the plaintiff employees are similarly situated to one another.

### III. Discussion

#### A. Motion for Class Certification

Plaintiffs are arguing that Rule 23 class certification is appropriate for the "Unpaid Wage" class of all non-exempt hourly workers employed by Defendants at any time from June 21, 2009 until the date of judgment after trial herein.  They argue that the facts show that Defendants required, suffered, and/or permitted all the members of the class of hourly employees to perform work off the clock, either by directly requiring them to do work before punching in and/or after punching out each shift, or by inappropriately rounding their time in favor of the employer in violation of NRS 608.016.  They also seek to certify three subclasses: the Shift Jamming Subclass consisting of all members of the Nevada Class who earned less than $12.38 an hour, who did not have at least 16 hours between shifts, and who were not paid overtime for all hours worked in excess of 8 hours in a workday; the Waiting Time Subclass consisting of all members of the Nevada Class who are former employees of the Defendants; and the Age Discrimination Subclass consisting of all members of the Nevada Class who are over the age of 40 and have been terminated from employment by the Defendants.

Because summary judgment has been granted on Plaintiff's fourth, fifth, seventh, and eighth causes of actions, the only ones that remain for certification are the fifth cause of action for Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250 and the Ninth Cause of Action for Age Discrimination in Violation of 29 § 621 and NRS 613.330.  This also means that the Shift Jamming Subclass (premised on a violation of NRS 608.050) and the Waiting Time Subclass (premised on violation of NRS 608.020-.050) are no longer at issue, and thus certification is denied as to those subclasses.

As the Supreme Court has noted, "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. 338.  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.*  The Supreme Court has further noted that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," *General Telephone Co. of the Southwest v. Falcon*,

7

457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *id.*, at 161, 102 S.Ct. 2364; *see id.*, at 160, 102 S.Ct. 2364 ("[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable"). Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. *Dukes*, 564 U.S. 338.

Here, Plaintiffs have simply failed to address their fifth cause of action for Failure to Pay Minimum Wages in Violation of the Nevada Constitution and NRS 608.250 while seeking class certification. The Supreme Court has clearly shown that the burden lies on the party seeking class certification and that burden is not a light one. Because Plaintiffs did not address this cause of action, there is nothing for the Court to perform a rigorous analysis on, and the Plaintiffs have failed to meet their burden to show why the claim should be certified as a class action. Therefore, class certification as to Plaintiffs' fifth cause of action is denied. Additionally, because class certification has been denied as to Plaintiff's fourth, fifth, sixth, seventh, and eighth claims, certification of the Unpaid Wages Class is consequently denied.

Plaintiffs also seek certification for the Age Discrimination Subclass for Plaintiffs' NRS 613.330 age discrimination claims. In response, Defendants argue that the class members have not filed notice of intent to sue, and that in any event, the claims do not meet the requirements for certification under Rule 23.

Under NRS 613.330(1), it is an unlawful employment practice to discharge any individual because of his or her race, color, sex, religion, sexual orientation, age, disability or national origin. *Pope v. Motel 6*, 121 Nev. 307, 311, 114 P.3d 277, 280 (2005). NRS 613.420 requires an employee alleging employment discrimination to exhaust her administrative remedies by filing a complaint with the Nevada Equal Rights Commission ("NERC") before filing a district court action. *Id.* However, the Ninth Circuit has held that "so long as one plaintiff timely files an administrative complaint, a class of similarly-situated plaintiffs may 'piggyback' on that complaint, thereby satisfying the exhaustion requirement." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1137 (9th Cir. 2012); *see also Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 759 (9th Cir. 1979); *E.E.O.C. v. Catholic Healthcare W.*, 530 F. Supp. 2d 1096, 1107 (C.D. Cal.

8

2008).  Thus, Boggs and Wiederholt's timely filed discrimination charges with the NERC could be sufficient to establish exhaustion of administrative remedies for all class members.

Still, in order to be certified as a class, the Rule 23 requirements of numerosity, commonality, typicality, and adequacy still must be met, and Plaintiffs have failed to demonstrate the required commonality in this case.

"A party seeking class action certification must demonstrate, under a strict burden of proof, that all of the requirements of 23(a) are clearly met." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 435 (10th Cir. 1978).  With respect to Rule 23(a)(2)'s commonality requirement, a plaintiff must show that class members "have suffered the same injury," *Falcon*, 457 U.S. at 157, and that "the incidents of discrimination complained of ... present a common issue that could be resolved efficiently in a single proceeding," *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 488 (7th Cir.2012), cert. denied, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McReynolds*, ––– U.S. ––––, 133 S.Ct. 338, 184 L.Ed.2d 157 (2012).

> [T]here is more to a showing of commonality than a demonstration that class plaintiffs suffered discrimination on the basis of membership in a particular group.... While in a case alleging intentional discrimination, such as this one, a plaintiff need not isolate the particular practice and prove that such practice caused the discrimination, plaintiffs must make a significant showing to permit the court to infer that members of the class suffered from a common policy of discrimination that pervaded all of the employer's challenged employment decisions.

*Hartman v. Duffey,* 19 F.3d 1459, 1472 (D.C. Cir. 1994).  Thus, commonality under Rule 23(a) requires a named plaintiff to show (1) discrimination (2) against a particular group (3) of which the plaintiff is a member, plus (4) some additional factor that "permit[s] the court to infer that members of the class suffered from a common policy of discrimination." *Id*. *Hartman* 's "common policy" requirement is consistent with the Supreme Court's teaching in *Falcon*, 457 U.S. 147. There the Court noted:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been [discriminated against], and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's

1       claim and the class claims will share common questions of law or fact .... For
2       respondent to bridge that gap, he must prove much more than the validity of his
own claim.

3       *Id*. at 157–58.

4           Here, the common questions Plaintiffs frame for the Age Discrimination Subclass are

5   "did Defendants institute a policy to discriminate on the basis of age?" and "did subclass

6   members suffer an adverse employment action because of age?"  This is not enough.  The bald

7   allegation that the declarants and non-declarants alike are unified by a "common policy" of age

8   discrimination is insufficient.  *Love v. Johanns*, 439 F.3d 723, 729 (D.C. Cir. 2006).

9       As the Sixth Circuit noted in a case where plaintiffs claimed to have been the victim of

10   the defendant's "general policy" of discrimination on the basis of sex, "[i]f this were the test,

11   every plaintiff seeking to certify a class … would be entitled to that certification."  *Reeb v. Ohio*

12   *Dep't of Rehab. & Corr*., 435 F.3d 639 (6th Cir. 2006); *see also Bacon v. Honda of Am. Mfg.,*

13   *Inc*., 370 F.3d 565, 571 (6th Cir. 2004) ("Conclusory allegations and general assertions of

14   discrimination are not sufficient to establish commonality." (citing *Falcon*, 457 U.S. at 157));

15   *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 397 (6th Cir. 1998) ("It is not every common

16   question that will suffice [to show commonality], however; at a sufficiently abstract level of

17   generalization, almost any set of claims can be said to display commonality. What we are

18   looking for is a common issue the resolution of which will advance the litigation.").

19       Here, a vaguely defined general policy is all that Plaintiffs allege.  They have not made

20   the significant showing required for the Court to infer that all class members suffered from a

21   common policy of discrimination that suffused all of the employer's challenged employment

22   decisions.  For example, the list of terminated employees Plaintiffs rely on gives no indication as

23   to why those employees were terminated, instead simply listing their name, position, date of hire,

24   date of birth, and date of termination.  The fact that Defendants terminated some employees over

25   the age of 60 does not constitute a significant showing of age discrimination, especially when

26   that same list shows that Defendants hired 66 employees over the age of 60 during that same

27   period.  Similarly, in the survey, Plaintiffs only asked the respondents if they felt they were

28   "treated unfairly because of age," and made no attempt to ascertain the age of the respondents or

whether the respondent felt they were not treated respectfully due to being an older employee or a younger employee. This is acknowledged in the survey itself. Even the declarations provided by the Plaintiff point only to the general idea that they were terminated or pressured into quitting because of their age. This is not enough to "bridge the gap." At heart, Plaintiffs offer nothing more than conclusory allegations and general assertions of discrimination, which is "not sufficient to establish commonality."

Moreover, resolution of the merits of the instant dispute would require "independent consideration of each plaintiff's qualifications for his or her position" and "their previous work performance and duties," a further strike against a finding of commonality. *Allen v. City of Chicago*, 828 F. Supp. 543, 552 (N.D. Ill. 1993). This is especially true, where, as here, the putative class members vary greatly in terms of their departments, supervisors, tenure, and other individual circumstances. *Morgan v. Metro. Dist. Comm'n*, 222 F.R.D. 220, 230 (D. Conn. 2004). Such a wide range of circumstances would elicit highly individualized defenses with respect to each plaintiff. *Id.* In effect, "[t]he factfinder will have to consider each of the named plaintiffs' claims on a case-by-case basis along with" any unique defenses Defendants will raise to each plaintiff. *Webb v. Merck & Co., Inc.,* 206 F.R.D. 399, 405-06 (E.D. Pa. 2002). Courts have declined to certify classes in similar situations. *Morgan*, 222 F.R.D. at 230; *see also Bacon*, 205 F.R.D. at 478-79 ("In light of the number of departments involved, the autonomy of those departments, the number of decisionmakers involved, and the diverse job functions and qualifications of those departments, the plaintiffs have not established that proof of any one class member's claim of disparate treatment will involve a common issue the resolution of which will advance the litigation.") (citation omitted); *Reyes v. Walt Disney World Co*., 176 F.R.D. 654, 658 (M.D. Fla. 1998) (denying class action brought by employees, in part based on the employees' employment in different departments under individualized circumstances and the attendant failure to show commonality and typicality, and the risk of unmanageability).

Here, the need for individualized defenses would also be great. The putative class in question consists of employees who have held at least 70 different positions in more than 50 different departments, under many different supervisors. Moreover, the complaints by

employees differ vastly.  In the survey, employees' complaints ranged from the skimpiness of uniforms to being written up for minor offenses.  In the declarations, the complaints cover things like new uniforms and being given worse shifts and sections.  Additionally, certification would also aggregate possibly non-discriminatory motives with possibly discriminatory ones.  For example, both of the named plaintiffs, Boggs and Wiederholt, had a disciplinary history indicating performance problems, which Defendants contend was the basis for their termination.  It is apparent, therefore, that if the Court were to certify the Plaintiffs' claims, the Court "would be grouping together many unrelated employment decisions made by many individual supervisors against many individual plaintiffs.  An analysis of these unrelated decisions would raise numerous individualized questions that are not amenable to generalized proof." *Reap v. Cont'l Casualty Co*., 199 F.R.D. 536, 545 (D.N.J. 2001).  Class certification is not appropriate in such circumstances.  *See Pruitt v. City of Chicago, Dep't of Aviation*, No. 03C 2877, 2004 WL 1146110, at *9 (N.D. Ill. May 20, 2004) (denying motion for Title VII class certification for failure to establish commonality and typicality due to numerous individual claims involving distinct content, time, and setting); *see also Rhodes v. Cracker Barrel Old Country Store, Inc*., 213 F.R.D. 619, 676 (N.D. Ga. 2003) (class certification inappropriate because proposed plaintiffs alleged misconduct within each individual's department to which defendant would likely offer a specific defense, and result in highly specific factual inquiries); *Wright v. Circuit City Stores, Inc*., 201 F.R.D. 526, 541 (N.D. Ala. 2001) ("[T]he court is of the opinion that the purported class is comprised of a large group of diverse and differently situated employees whose highly individualized claims of discrimination do not lend themselves to class-wide proof."); *Bostron v. Apfel*, 182 F.R.D. 188, 196 (D. Md. 1998) (broad conclusory allegations of widespread discrimination along with a "jumble of numbers" were insufficient to satisfy commonality and typicality); *Lumpkin v. E.I. Du Pont de Nemours & Co*., 161 F.R.D. 480, 482 (M.D. Ga. 1995) (concluding that the discrete and individualized nature of plaintiffs' claims and evidence-including different departments, different supervisors, and different shifts-were not susceptible to generalized proofs or defenses and, therefore, failed to demonstrate commonality and typicality).

**B.  Motion for Summary Judgment**

Next, Defendants move for summary judgment on Plaintiffs' first cause of action for Failure to Pay Wages for All Hours Worked in Violation of 29 U.S.C. § 201, et. seq.  Defendants argue that the FLSA only requires payment of minimum wages and overtime wages, thus as long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week.  Plaintiffs argue that gap time claims are permitted by the Ninth Circuit and that in any event they still have a viable straight time claim under the FLSA because they were hourly paid employees who received zero dollars for performing work activities off-the-clock.

"Gap time" refers to "uncompensated hours worked that fall between the minimum wage and the overtime provisions of the FLSA." *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 (9th Cir. 1999).  Essentially, gap time "is non-overtime hours worked for which an employee is not compensated." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3rd Cir. 2014).  Some courts have distinguished between two types of gap time—pure gap time and overtime gap time.  *See, e.g., Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1280 (4th Cir.1996).  As explained below, Plaintiffs are not entitled to recover either pure gap time or overtime gap time.

Regarding the first type of gap time, the prevailing view is that "pure gap time claims—straight time wages for unpaid work during pay periods without overtime—are not cognizable under the FLSA, which requires payment of minimum wages and overtime wages only." *Id.* at 244. *See also Nakahata v. New York–Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 201–02. (2nd Cir.2013) ( "the FLSA does not provide a cause of action for unpaid gap time"); *Monahan*, 95 F.3d at 1280 ("there is no cause of action under the FLSA for pure gap time when there is no evidence of a minimum wage or maximum hour violation by the employer"); *Hensley v. MacMillan Bloedel Containers, Inc*., 786 F.2d 353, 357 (8th Cir.1986).  The FLSA provides that employers must pay employees a minimum wage of at least $7.25 per hour worked during any workweek.  29 U.S.C. § 206(a).  A violation of the FLSA occurs only when the total weekly wage paid by the employer, "when averaged across the[ ] total time worked," falls below the minimum weekly requirement. *Adair*, 185 F.3d at 1063; s*ee also Monahan*, 95 F.3d at 1270–

13

1272 (4th Cir.1996); *Hensle*, 786 F.2d at 357; *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir.

1985); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960).  The

minimum weekly requirement is calculated by multiplying the minimum hourly statutory

requirement by the number of hours actually worked in a particular week.  *See Hensley*, 786 F.2d

at 357 (citing *Klinghoffer*, 285 F.2d at 490).

In this case, Plaintiffs allege that Defendants violated Section 206 by failing to pay them

"for all hours worked."  Such an allegation fails to understand the standard applicable to

minimum wage cases.  "If [Plaintiffs'] average weekly pay does not fall below $7.25 per hour,

then the FLSA does not grant them a remedy for minimum wage violations.  This is so regardless

of whether they were actually paid for each hour worked."  *Sullivan v. Riviera Holdings Corp.*,

No. 2:14–cv–00165–APG, 2014 WL 2960303, at *2 (D. Nev. June 30, 2014); *see also Levert v.

Trump Ruffin Tower I, LLC,* No. 2:14-CV-01009-RCJ, 2015 WL 133792, at *3 (D. Nev. Jan. 9,

2015).  Plaintiffs do not provide any information to show that they were, in fact, paid below the

minimum wage amount, and in fact do not argue that their weekly pay fell below federal

minimum wage because of Defendants' actions.  They instead argue that the minimum wage

calculation should be on an hourly and not a workweek basis, but this is controverted by the

several decisions from this district, *id.*, and with which this Court agrees.  Therefore, Plaintiffs

have no cognizable pure gap time claim.

The more difficult question is whether the FLSA allows recovery for overtime gap time.

The two circuits which have addressed the issue—the Second and the Fourth—reached different

conclusions.  In *Monahan*, the Fourth Circuit held that while pure gap time is always precluded

under the FLSA, an employee may recover overtime gap time if an employee exceeds the

overtime threshold and the employment contract does not expressly or implicitly compensate an

employee for non-overtime hours.  *Monahan*, 95 F.3d at 1273.

The Second Circuit, on the other hand, held that an employee may not bring a gap-time

claim under the FLSA "even when an employee has worked overtime."  *Lundy v. Catholic*

*Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2nd Cir.2013).  The Second Circuit reasoned,

"the text of FLSA requires only payment of minimum wages and overtime wages.  It simply

does not consider or afford a recovery for gap-time hours." *Id*. *Lundy* expressly rejected *Monahan*, finding the case unpersuasive because it relied on interpretive and "unreasoned" guidance from the Department of Labor. *Id*. at 116–17. Specifically, *Lundy* critiqued 29 C.F.R. § 778.315. *Id*. In discussing the FLSA pay requirement for time-and-a-half, § 778.315 states that "[t]his extra compensation for the excess hours of overtime under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) ... has been paid." 29 C.F.R. § 778.315. *Lundy* noted that this section "suggests that an employer could violate FLSA by failing to compensate an employee for gap time worked when the employee also works overtime; but the Department of Labor provides no statutory support or reasoned explanation for this interpretation." *Id*. at 117. Finding no persuasive support to rule otherwise, and rejecting *Monahan*, the court in *Lundy* affirmed the dismissal of the plaintiff's overtime gap time claim. *Id*.

This Court, and others in the Ninth Circuit, agrees with the Second Circuit's ruling. *See, e.g., Gomley v. Crossmark, Inc*., No. 1:13-CV-00420-BLW, 2015 WL 1825481, at *6 (D. Idaho Apr. 22, 2015); *Young v. Beard*, No. 2:11-CV-02491-KJM-AC, 2015 WL 1021278, at *12 (E.D. Cal. Mar. 9, 2015), appeal dismissed (June 30, 2015); *Perez v. Wells Fargo & Co*., 75 F. Supp. 3d 1184, 1188 (N.D. Cal. 2014). The plain language of the FLSA does not encompass gap time pay—whether it be pure gap time or overtime gap time. As such, the Court will grant summary judgment on Plaintiffs' first cause of action and will subsequently decertify the class as to that claim.

### C.  Motion to Decertify FLSA Collective Action

Section 216(b) of the FLSA provides that an action for violations may be maintained against an employer by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "[T]he fundamental inquiry in determining whether a collective action under § 216(b) is appropriate is whether or not the plaintiffs are 'similarly situated.' " *Smith v. Heartland Auto. Servs., Inc*., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005). Plaintiffs may show that they are similarly situated by either proving that

15

the employer "engaged in a unified policy, plan, or scheme of FLSA violations," or that "their positions are 'similar, not identical' to the positions held by the other class members." *Kautsch v. Premier Commc'ns*, No. 06CV04035 NKL, 2008 WL 294271, at *1 (W.D. Mo. Jan. 31, 2008) (internal citation omitted).

At the initial conditional-certification stage, the plaintiffs' burden is not rigorous; they must only show that there is a "colorable basis for their claim" and "that a class of similarly situated plaintiffs exists." *Smith*, 404 F. Supp. 2d at 1149. At the decertification stage, however, the standard is stricter, and three factors are analyzed: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff, and (3) fairness and procedural considerations. *Id*. at 1149–50 (citing *Thiessen*, 267 F.3d at 1103). The essential question is "whether the difference among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." *White v. Baptist Mem. Health Care Corp*., No. 08CV02478 SMH, 2011 WL 1883959, at *4 (W.D. Tenn. May 17, 2011). Additionally, the prevailing view is that plaintiffs bear the burden of proving that collective action treatment is appropriate. *Anderson*, 488 F.3d at 953; *Smith*, 404 F. Supp. 2d at 1149; *Pfohl v. Farmers Ins. Group*, Case No. CV–03–3080 DT (RCx), 2004 WL 554834, at *2 (C.D. Cal. Mar.1, 2004). It is not sufficient for the plaintiffs' evidence to merely "successfully engage" the competing evidence offered by the defendant, rather, it is plaintiffs' burden to provide substantial evidence to demonstrate that they are similarly situated. *Castle v. Wells Fargo Fin., Inc*., Case No. C–06–4347–SI, 2008 WL 495705, at *2 (N.D. Cal. Feb.20, 2008); *Smith v. Micron Electronics, Inc*., Case No. CV–01–244–S–BLW, 2005 WL 5336571, at *2 (D. Idaho Feb.4, 2005).

## 1.  Disparate Factual and Employment Settings

To proceed as a collective action, Plaintiffs must present substantial evidence of a common policy, plan, or scheme of permitting or requiring uncompensated off-the-clock work. "An allegation of an 'overarching' policy is generally insufficient; plaintiffs must produce 'substantial evidence' of a 'single decision, policy or plan.' " *Micron*, 2005 WL 5336571, at *2. Here, Plaintiffs do not identify a single decision, policy, or plan, but instead point to Defendants'

16

overarching policy of suffering or permitting work without compensation.  First, Defendants

written policies specifically stated that they provide "compensation for all overtime hours

worked by non-exempt employees in accordance with state and federal law."  In fact,

Defendants' payroll manager, Jennifer Humason, affirmed that payroll records revealed that all

but two of the forty-five sample plaintiffs had been paid some amount of overtime during the

time period from June 2010 to May 2014.  As the Court in *Reed* noted, this indicates that if the

company did have a policy with respect to overtime, the policy was to pay employees for it.

*Reed v. Cty. of Orange*, 266 F.R.D. 446, 458 (C.D. Cal. 2010).  Second, a blanket statement that

Defendants had a policy of suffering or permitting work without compensation is not enough to

demonstrate a single policy, as Plaintiffs were employed in many different departments, under

many different supervisors, and allege a variety of uncompensated activities, including picking

up equipment, attending meetings, changing uniforms, and attending dance classes.  If Plaintiffs

were denied overtime pay, it occurred in many different ways, by many different managers, at

different times, and in different assignments and locations.  There was no single, uniform policy

not to pay overtime.

  While Plaintiffs do point to Defendants' rounding policy, the rounding policy alone is not

enough to meet Plaintiffs' burden at the decertification stage, where "the similarities necessary to

maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and

pay provisions."  *Kelly v. Healthcare Servs. Grp., Inc*., No. 2:13-CV-00441-JRG, 2015 WL

3464131, at *4 (E.D. Tex. June 1, 2015) (citing *Anderson*, 488 F.3d at 953 (internal quotation

marks omitted); *see also Mooney v. Aramco Servs*. Co., 54 F.3d 1207, 1212 (5th Cir. 1995)

("[T]he Court has much more information on which to base its decision, and makes a factual

determination on the similarly situated question."), overruled on other grounds by *Desert Palace,

Inc. v. Costa*, 539 U.S. 90 (2003).  In other words, while the common rounding policy may have

been sufficient at the conditional certification stage, it alone cannot bind the Plaintiffs' claims

now.  *Id*.  "Otherwise, it is doubtful that § 216(b) would further the interests of judicial

economy, and it would undoubtedly present a ready opportunity for abuse."  *Anderson*, 488 F.3d

at 953.

Because Plaintiffs were not subject to a uniform illegal compensation policy, they cannot point to a common violation of law that binds the purported collective action. Absent a unifying illegal policy, Plaintiffs must demonstrate that they are factually similarly situated or that the employer's practice was to systematically disregard its own legal policy. *See, e.g., White*, 2011 WL 1883959 at *9–10 ("Where an employer's formal policy is to compensate employees for all time worked, courts have generally required a showing that the employer's common or uniform practice was to not follow its formal, written policy.") Moreover, for those arguments to be pertinent to certification, Plaintiffs must demonstrate that the illegal practices about which they complain are sufficiently uniform and pervasive as to warrant class treatment, *i.e.*, that these violations can be generalized across the opt-in Plaintiffs in this case such that collective treatment would further procedural and fairness considerations. *Zivali v. AT & T Mobility*, LLC, 784 F. Supp. 2d 456, 463 (S.D.N.Y. 2011).

Decertification is appropriate where plaintiffs are subject to varying work conditions in different work locations or under different supervisors. *Proctor v. Allsups Convenience Stores, Inc*., 250 F.R.D. 278, 282 (N.D. Tex. 2008); *Brechler v. Qwest Communications Intl*., Case No. CV–06–00940–PHX–ROS, 2009 WL 692329, at *2 (D. Ariz. March 17, 2009); *Johnson v. TGF Precision Haircutters, Inc*., Case No. CV–H–03–3641, 2005 WL 1994286, at *2–*4 (S.D. Tex. Aug.17, 2005); *Lawrence v. City of Philadelphia*, No. 03–CV–4009, 2004 WL 945139 (E.D. Pa. April 29, 2004). Plaintiffs argue that the class is similarly situated because they all worked in one location and were subject to the same policies and procedures. However, the evidence before the Court shows substantial variations among the class members.

Plaintiffs worked in over 50 different departments and sub-departments, including more than 70 different positions. For example, the survey by Plaintiffs' expert describes unpaid work encompassing everything from paperwork to bar preparation to changing to dance classes. That same survey indicates that 75% of respondents indicated that they were not asked to work off-the-clock by a supervisor. These variations are further borne out through deposition testimony. For example, Sargent testified that members of the beverage department were required to work off the clock. However, Plaintiff Auturo Pineda, a member of the beverage department, testified

that he had never been asked to work off the clock.  Similarly, while Plaintiff Rosie Boggs testified that she had to return work related equipment off-the-clock, Plaintiffs' survey shows that only 25% of respondents reported doing the same thing.  Additionally, the most common pre- and post-work activity reported in the survey, changing into and out of the uniform, was only reported by roughly half of the respondents, and further testimony shows that they were allowed to change at home.  Similarly, some Plaintiffs state that pre-shift meetings were held on-the-clock, while others state they were held off-the-clock.  This marks the case as similar to *Lugo*, in which the Court decertified the class because while all of the putative class members were hourly employees at the same plant, "the record as a whole [did] not support the conclusion that their particular experiences were shared by all plaintiffs, or reflected a common practice or policy of the defendant" due to substantial variations in individuals, departments, positions, and shifts.  *Lugo v. Farmer's Pride Inc*., 737 F. Supp. 2d 291, 316 (E.D. Pa. 2010).  Thus, this case differs from those where liability can be proven on a classwide basis, and the only material difference among plaintiffs is the amount of damages owed to each of them, which is generally considered insufficient to deny class treatment.  *Lugo*, 737 F. Supp. 2d at 303.  Indeed, individualized inquiries would also have to be conducted to determine whether any of the class members worked off-the-clock during any given week, and if so, how many hours were worked.  Because these issues are central to the question of liability, treatment of plaintiffs' claims on a collective basis is inappropriate. *See, e.g., White*, 2011 WL 1883959, at *5; *Wright v. Pulaski Cty*., No. 4:09 CV 00065 SWW, 2010 WL 3328015, at *9–10; *Espenscheid v. DirectSat USA, LLC*, No. 09CV625 BBC, 2011 WL 2009967, at *5 (W.D. Wis. May 23, 2011).

### 2. Individualized Defenses

Another factor courts consider in determining whether to decertify a conditionally-certified FLSA class is the defenses available to the defendant which are individual as to each plaintiff.  *See Wright*, 2010 WL 3328015, at *9 (citing *Thiessen*, 267 F.3d at 1103); *Smith*, 404 F. Supp. 2d at 1149 (citations omitted).  Here, Defendants assert several individualized defenses: that determining whether an employer knew or should have known that the employee worked off-the-clock is by its nature an individual defense, that the majority of employees testified they

1  were not required to work off-the-clock, that employees were not working when they clocked in

2  early or clocked out late, and that any time was de minimis.  Plaintiffs argue that all defenses

3  asserted by the Defendants are class wide defenses.  However, the defenses raised by Defendants

4  are similar to those found to be individualized by other courts.  *See, e.g. Camesi v. University of*

5  *Pittsburgh Medical Center*, 2011 WL 6372873, at *9 (W.D. Pa. Dec. 20, 2011) (decertifying the

6  conditionally-certified FLSA class in light of defendant's individualized defenses which included

7  "whether individual plaintiffs actually worked overtime without compensation."); *Reed*, 266

8  F.R.D. at 460 (concluding that "whether a particular deputy worked overtime; whether and why

9  a particular deputy may have under-reported work time; whether supervisors were aware of

10  alleged off-the-clock work; whether a particular deputy violated Defendants' policies for

11  accurately recording time; whether the particular activities were compensable; and whether the

12  time spent on these activities was de minimis" were individualized defenses).

13         Two of these defenses merit a closer look.  First, Plaintiffs couch their case on the

14  assertion that Defendants suffered or permitted its employees to work without compensation.  To

15  establish this, Plaintiffs will need to demonstrate that GSR management either had constructive

16  or actual knowledge that Plaintiffs were working off-the-clock without pay.  *Reed*, 266 F.R.D. at

17  460; *Pforr v. Food Lion, Inc*., 851 F.2d 106, 109 (4th Cir.1988); *Maciel v. City of Los Angeles*,

18  569 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008).  "'It is not enough for a plaintiff to establish his

19  employer's knowledge of a few incidents of off-the-clock work' for several years' worth of

20  claims."  *Reed*, 266 F.R.D. at 460 (quoting *Pforr*, 851 F.2d at 109).  To rebut Plaintiffs'

21  allegations of knowledge, Defendants will have to introduce evidence that is inherently

22  individualized.  *Hinojos v. Home Depot, Inc*., Case No. 2:06–CV–00108, 2006 WL 3712944, at

23  *3 (D. Nev. Dec.1, 2006).  Where, as here, there is no uniform policy or practice, "plaintiffs will

24  have to demonstrate that each individual manager had actual or constructive knowledge that

25  plaintiffs were performing off-the-clock work without proper compensation."  *Desilva v. N.*

26  *Shore-Long Island Jewish Health Sys., Inc*., 27 F. Supp. 3d 313, 325 (E.D.N.Y. 2014) (citing

27  *Zivali*, 784 F. Supp. 2d at 468).

28  ///

Second, there is the de minimis defense.  Under the de minimis doctrine, employees are not entitled to compensation for insubstantial periods of time spent working.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified.... It is only when an employee is required to give up a substantial measure of  his time and effort that compensable working time is involved"); *Singh v. City of New York*, 524 F.3d 361 (2d Cir. 2008); *Reich v. Monfort, Inc.*, 144 F.3d 1329 (10th Cir.1998).  Since the Court has determined that Plaintiffs' claims are highly individualized, determining whether and when a particular Plaintiff regularly engaged in additional work and calculating the aggregate amount of time worked is an inherently individualized inquiry.  *Smith*, 2007 WL 2385131, at *8; *Basco v. Wal-Mart Stores, Inc.*, No. CIV.A. 00-3184, 2004 WL 1497709, at *8 (E.D. La. July 2, 2004).

Plaintiffs argue that that the difference between when an employee arrived on the property and when they clocked in demonstrates that the off-the-clock time was far more than de minimis, but this argument is flawed.  Because of the variety of job duties at issue and tasks performed off the clock the "extent to which work was de minimis, [ ] will necessarily vary widely according to the particular situation of each individual plaintiff."  *Desilva*, 27 F. Supp. 3d at 326 (quoting *Zivali*, 784 F. Supp. 2d at 468).  Similarly, the calculations relied on by the Plaintiffs do not take into account that Plaintiffs may have been doing things other than working in between their arrival at the property and clocking in.  Defendants have provided deposition testimony that some Plaintiffs would get coffee before work or have a beer after work, for example.  This indicates that there would be genuine need for Defendants to individually address each employee.

Plaintiffs similarly challenge the rounding policy as consistently disfavoring the employee; however, for the Defendants to properly challenge this argument, individualized defenses would be necessary.  Without a common policy showing that the opt-in Plaintiffs were required to clock in early or clock out late, this defense is individual to each Plaintiff.  *See Kelly*, 2015 WL 3464131 at *4.  In addition, even if Plaintiffs could show, collectively, that the opt-in

21

1   Plaintiffs always clocked in to work early and clocked out late, to be eligible for an hourly wage

2   during that extra seven minutes, the Plaintiffs must have actually been working during that extra

3   seven minutes.  Plaintiffs have presented no evidence that every time a Plaintiff clocked in early

4   that Plaintiff immediately began work.  *See Alonzo v. Maximus, Inc*., 832 F. Supp. 2d 1122, 1128

5   (C.D. Cal. 2011) ("[T]he evidentiary record is devoid of evidence that [timesheet records] reflect

6   time actually worked by Plaintiffs, as opposed to time Plaintiffs may have been present on

7   Defendant's premises but not engaged in work activities.").  Defendants should be allowed to

8   present individualized evidence of employee behaviors.

9   **3.  Fairness and Procedural Considerations**

10          When ruling upon a decertification motion, coherent management of the trial and

11   avoidance of jury confusion are essential considerations.  *See Gatewood v. Koch Foods of*

12   *Mississippi, LLC*, 3:07CV00082 KS–MTP, 2009 WL 8642001, at *20 (S.D. Miss. Oct. 20, 2009)

13   ("a collective action is designed to permit the presentation of evidence regarding certain

14   representative plaintiffs that will serve as evidence for the class as a whole.  It is oxymoronic to

15   use [the collective action] device in a case where proof regarding each individual plaintiff is

16   required to show liability.").  At first blush, this factor weighs in favor of certifying plaintiffs as a

17   class.  In fact, it would seem that conducting one trial for all of the plaintiffs would aid judicial

18   economy.  The problem, however, is that due to the disparate facts of each plaintiff and

19   Defendants' individualized defenses, it would be very difficult to appropriately adjudicate the

20   claims of the named plaintiffs and the approximately 480 opt-in plaintiffs collectively.  Each

21   plaintiff's case requires consideration of different background facts and different testimony based

22   on each employee's work activities.  Representative testimony will not accurately capture each

23   Plaintiff's diverse factual circumstances.  This would result in some Plaintiffs being prejudiced

24   by underpayment on their claims as well as prejudice to Defendants, who would overpay some

25   Plaintiffs on their claims.  *See Reed*, 266 F.R.D. at 462-63.  Further, failing to decertify the

26   conditionally-certified class will unfairly and prejudicially require Defendants to prepare for and

27   present hundreds of different trials simultaneously.  *See King v. West Corp*., 2006 WL 118577, at

28   *15, 2006 U.S. Dist. LEXIS 3926, at *47 (D. Neb. Jan. 13, 2006) ("Disparate individual defenses

22

heighten the individuality of claims, and requiring the defendant to raise these arguments in a [collective] action suit undermines its ability to mount a clear and coherent defense to the case.").  All of these reasons dictate against certifying a collective action under § 216(b).

**IV.     Conclusion**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Class Certification (Doc. #144) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment (Doc. # 162) is GRANTED  in accordance with this order.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of Defendants and against Plaintiffs on Plaintiffs' first cause of action.

IT IS FURTHER ORDERED that Defendants' Motion to Decertify FLSA Collective Action (Doc. # 162) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Leave to File Excess Pages (Doc. # 164) is GRANTED nunc pro tunc.


IT IS SO ORDERED.

DATED this 22nd day of March, 2016.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE