UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TIFFANY SARGENT, BAILEY CRYDERMAN, SAMANTHA L. IGNACIO (formerly SCHNEIDER), VINCENT M. IGNACIO, HUONG ("ROSIE") BOGGS, and JACQULYN WIEDERHOLT on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>HG STAFFING, LLC; MEI-GSR HOLDINGS, LLC d/b/a GRAND SIERRA RESORT; and DOES 1 through 50, inclusive,<br><br>                  Defendants. | Case No. 3:13-cv-00453-LRH-GWF<br><br>ORDER |

Before the court are six pending dispositive motions:

First, defendants HG Staffing, LLC and MEI-GSR Holdings, LLC d/b/a Grand Sierra (collectively "defendants") moved for summary judgment against plaintiff Tiffany Sargent ("Sargent").[1] ECF No. 253. Sargent filed an opposition (ECF No. 268), to which defendants replied (ECF No. 283).

Second, defendants moved for summary judgment against plaintiff Bailey Cryderman ("Cryderman"). ECF No. 258. Cryderman filed an opposition (ECF No. 267), to which defendants replied (ECF No. 282).

---

[1] Sargent's name has been spelled differently throughout the pendency of this case, even sometimes within the same document. The court now adopts the spelling from her deposition, and for consistency purposes, will use this spelling throughout the Order.

Third, defendants moved for summary judgment against plaintiff Jacqulyn Wiederholt ("Wiederholt"). ECF No. 255. Wiederholt filed an opposition, (ECF No. 269), to which defendants replied (ECF No. 285).

Fourth, defendants moved for summary judgment against plaintiff Huong "Rosie" Boggs ("Boggs"). ECF No. 254. Boggs filed an opposition, (ECF No. 266), to which defendants replied (ECF No. 284).

Fifth, defendants moved for summary judgment against plaintiff Vincent Ignacio ("V. Ignacio"). ECF No. 256. V. Ignacio filed an opposition, (ECF No. 270), to which defendants replied (ECF No. 287).

Sixth, defendants moved for summary judgment against plaintiff Samantha Ignacio (formally Schneider) ("S. Ignacio"). ECF No. 257. S. Ignacio filed an opposition, (ECF No. 271), to which defendants replied (ECF No. 286).

The court now denies in part and grants in part defendants' motions as set forth in this Order.

# I.       BACKGROUND

Plaintiffs sue the defendants for violations of the Fair Labor Standards Act ("FLSA"), the Nevada Constitution, provisions of the Nevada Revised Statutes, and the Age Discrimination in Employment Act ("ADEA"). ECF No. 47. Plaintiffs' Second Amended Complaint alleged that defendants: (1) failed to pay wages for all hours worked in violation of 29 U.S.C. § 201, *et. seq.*; (2) failed to pay overtime in violation of 29 U.S.C. § 207; (3) failed to pay overtime at the correct rate in violation of 29 U.S.C. § 207; (4) failed to compensate for all hours worked in violation of Nevada Revised Statute ("NRS") §§ 608.140 and 608.016; (5) failed to pay minimum wage in violation of the Nevada Constitution and NRS § 608.250; (6) failed to pay overtime in violation of NRS §§ 608.140 and 608.018; (7) failed to timely pay all wages due and owing in violation of NRS §§ 608.140 and 608.020-.050; (8) made unlawful chargebacks in violation of NRS §§ 608.140 and 608.100; and (9) violated the ADEA, 29 U.S.C. § 621 and NRS § 613.330. ECF No. 47.

*///*

On January 12, 2016, the court initially granted partial summary judgment for the defendants as to plaintiffs' fourth, sixth, seventh, and eighth causes of action. ECF No. 172. However, following the Nevada Supreme Court's ruling in *Neville v. Eighth Judicial District Court in & for County of Clark*, 406 P.3d 499 (Nev. 2017), the court reversed in part its prior order, and reinstated plaintiffs' fourth, sixth, and seventh claims. ECF No. 248. Plaintiffs' eighth cause of action remains dismissed. *Id.* On March 22, 2016, the court also granted partial summary judgment for defendants on plaintiffs' first cause of action, which also remains dismissed. ECF No. 174.

In reinstating plaintiffs' fourth, sixth, and seventh causes of action, the court dismissed defendants then pending motions for summary judgment (*see* ECF Nos. 218, 220, 222–225) and instructed defendants to refile these motions in light of the court's order. ECF No. 248. On March 2, 2018, defendants re-filed motions for summary judgment as to all 6 of the plaintiffs. ECF Nos. 253–258. The court's order as to these pending dispositive motions now follows.

## II. LEGAL STANDARD

**Motion for Summary Judgment Pursuant to Civil Procedure Rule 56.**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*,

799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

## III.    DISCUSSION

### A.  NRS Chapter 608 provides a private right of action for unpaid wages.

The Nevada Supreme Court's decision on this matter is clear: Chapter 608 allows for a private right of action. *See Neville*, 406 P.3d 499. In *Neville*, the defendant, similarly to the defendants in this case, argued that the Legislature had given the Nevada Labor Commissioner exclusive enforcement authority and therefore, no private right of action existed. *Id.* at 501. However, the Court concluded that "the Legislature intended to create a private right of action for unpaid wages pursuant to NRS 608.140." *Id.* at 504. It then reversed the dismissal of the plaintiff's wage claims brought under Chapter 608 and tied to NRS § 608.140—specifically NRS §§ 608.016, 608.018, and 608.020 to 608.050. *Id.*

Defendants here argue that even if a private right of action exists, plaintiffs were still required to exhaust their administrative remedies, including making a good faith attempt to collect their wages, before plaintiffs could file their claims in this court. The court disagrees.

First, in *Neville*, the plaintiff also did not file his claim before the Nevada Labor Commissioner. However, the Court still found that a private right of action existed and reversed

4

the lower court's grant of summary judgment. *Id.* at 504. Had the Court intended to follow defendants' reasoning, that even if a private right of action exists a plaintiff must still exhaust its administrative remedies, the Court would not have reversed the lower court. Rather, the Court would have found that a private right of action exists but would have nevertheless affirmed the lower court because plaintiff failed to exhaust his administrative remedies. This was not the Court's ruling; therefore, it follows that exhaustion is not required.

Second, prior precedent from the Nevada Supreme Court also supports a finding that exhaustion is not required. In *Baldonado v. Wynn Las Vegas, LLC*, the Court determined that the "Legislature has entrusted labor laws' enforcement to the Labor Commissioner, unless otherwise specified;" noting, for example, that NRS § 608.140 provides for a private right of action. 194 P.3d 96, 102, 104 n.33 (Nev. 2008). The Court then held that "[a]s no private remedy is implied under NRS 608.160, appellants had no right to obtain relief in the district court under that statute." *Id.* at 104-05. It follows that had a private right of action existed, the appellant would have been permitted to obtain relief in the district court without first exhausting his claims before the Labor Commissioner.

From this precedent, it is clear that not only does a private right of action exist in this case, but plaintiffs are not required to exhaust their administrative remedies prior to bringing suit. Additionally, because plaintiffs are not required to bring suit first before the Labor Commissioner, additional administrative procedures, such as making a good faith attempt to collect wages, are not required before filing suit in this court. Given that plaintiffs, in accordance with the Court's ruling in *Neville*, tied their fourth, sixth, and seventh causes of action to NRS § 608.140, which provides for a private cause of action, the court finds that defendants' motions for summary judgment fail as to this argument.

### B. Statute of Limitations

#### i. Statute of Limitations under FLSA

Claims for violations of the FLSA must be brought within 2 years of the violation. 29 U.S.C. § 255(a). However, a "cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *Id.* "A violation of the FLSA

is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.'" *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003) (brackets omitted) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "An employer need not violate the statute knowingly for its violation to be considered 'willful' under § 255(a), although 'merely negligent' conduct will not suffice." *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) (internal citations omitted). Rather, "[a]n employer's violation of the FLSA is 'willful' when it is 'on notice of its FLSA requirements, yet takes no affirmative action to assure compliance with them.'" *Id.* (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003). "The plaintiff bears the burden of proof on the issue of willfulness for statute of limitations purposes." *Roces v. Reno Housing Authority*, 300 F. Supp.3d 1172, 1180 (D. Nev. 2018) (quotations and citation omitted).

As discussed in detail below, the FLSA requires employers pay employees for overtime. It is undisputed that plaintiffs and defendants were in an employer-employee relationship, and therefore, defendants are required to follow the FLSA. Plaintiffs allege that they were not paid for overtime as required under the statute: plaintiffs testified that supervisors "wrote-up" employees for working unauthorized overtime and were told to do so by management; that employees were required to work prior to clocking-in and also after clock-out in order to not incur overtime; that they were directed to do so by management; and that they believed these directions were coming from the GSR.

The court makes no determination as to whether this conduct occurred but finds that plaintiffs have successfully presented evidence upon which a reasonable jury could find defendants willfully violated the FLSA. Because willfulness is a question for the jury, summary judgment is inappropriate on this issue. *See Dixon v. City of Forks*, Case No. C08-5189 FDB, 2009 WL 1459447, at *6 (W.D. Wash. May 26, 2009). Should the jury find defendants' conduct was not willful, a two-year statute of limitations will apply, and any award of damages will be limited to plaintiffs' claims made within the statutory period.

///

///

ii.  <u>Statute of Limitations under the Minimum Wage Amendment to the Nevada Constitution</u>

Though the Minimum Wage Amendment ("MWA") does not specify a time frame in which a plaintiff must bring a cause of action, the Nevada Supreme Court recently addressed this issue. *See Perry v. Terrible Herbst, Inc.*, 383 P.3d 257, 260-62 (2016). The Court reasoned that because the "nature of the claim, not its label, determines what statute of limitations applies, . . . when a statute lacks an express limitations period, courts look to analogous causes of action for which an express limitations period is available either by statute or by case law." *Id.* at 260 (internal quotations and citations omitted). The Court determined that "the most closely analogous statute to the MWA is NRS 608.260, as both permit an employee to sue his employer for failure to pay the minimum wage." *Id.* at 262. As NRS § 608.260 carries a two-year statute of limitations, the Court held that so too should the MWA. *Id.* The Court further reasoned a 2 year statute of limitations was appropriate because as "NRS 608.115 requires employers to maintain an employee's record of wages for two years," applying a two-year limitations period to the MWA promotes uniformity. *Id.*

Following this precedent, the court finds that plaintiffs' fifth cause of action for violations of the MWA is governed by a two-year statute of limitations. Therefore, to the extent plaintiffs claim defendants failed to pay minimum wage pursuant to the MWA prior to September 16, 2011, the court grants defendants' motions for summary judgment.

iii.  <u>Statute of Limitations under NRS § 608.018</u>

NRS § 608.018 does not provide for an express limitations period, and the court has not found any state case law addressing the issue. Therefore, as discussed above, the court should look to an analogous cause of action in which the statute of limitations is express. The FLSA is the most analogous statute to NRS § 608.018: both statutes allow employees to sue employers for a failure to pay overtime. Further, analogizing NRS § 608.018 to the FLSA promotes uniformity. Should the court apply a different statute of limitations for the state law claims and the FLSA claims, plaintiffs could end up with differing results for substantially similar claims.

///

Additionally, the Nevada Supreme Court has previously looked to the FLSA when deciding state law wage claims. *See Terry v. Sapphire Gentlemen's Club*, 336 P.3d 951, 958 (Nev. 2014) ("We therefore adopt the FLSA's 'economic realities' test for employment in the context of Nevada's minimum wage laws."); *Rite of Passage, ATCS/ Silver State Academy v. State of Nevada*, No. 66388, 2015 WL 9484735, at *1 (Nev. Dec. 23, 2015) (unpublished) ("As Nevada law provides little guidance on this issue, we turn to the federal courts' interpretation of hours worked under the federal Fair Labor Standards Act.").

Following the FLSA, generally a two-year statute of limitations period would apply; if the employers' conduct was willful, there would be a three-year statutory period. As discussed above, willfulness is a determination for the jury. Therefore, summary judgment is likewise inappropriate on this issue. Should the jury find defendants' conduct was not willful, a two-year statute of limitations will apply, and any award of damages will similarly be limited to plaintiffs' claims made within the statutory period.

**C. Because plaintiffs failed to disclose their expert, James Toney, his testimony, his declaration, and any calculations plaintiffs relied upon, are excluded.**

In Federal Court, the rules of civil procedure are finite: "a party must disclose to the other parties the identity of any witness it may use at trial." Fed. R. Civ. P. 26(a)(2)(A). Unless otherwise agreed, this expert must provide a written report containing: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). On a review of the record, the court has found no evidence that Toney was disclosed in accordance with these rules.

On April 22, 2015, plaintiffs provided their fourth amended supplemental disclosure. *See* ECF No. 288, Exhibit B. It stated: "Plaintiffs will supplement their discovery to provide damage calculations when the information becomes available as ongoing discovery is conducted." *Id.* Plaintiffs attached to this disclosure 1-page reports, one per plaintiff, showing what appear to be damages calculations. *Id.* Nowhere in this disclosure is the author of the 1-page reports identified. Nor do these 1-page reports show how the calculations were reached or what data was relied on to reach the calculations.

Per Rule 26(a)(2), the parties stipulated that expert witnesses were to be disclosed 60 days prior to the second-phase discovery cut-off date, with rebuttal experts disclosed 30 days after that. ECF No. 190. The parties stipulated that phase-two of discovery would begin on the date the court ruled on class certification, (ECF No. 85), which the court did on March 22, 2015, (ECF No. 174). Phase-two was initially to last 120 days, which would have required expert witness disclosures be made by May 23, 2016. ECF No. 85. Though the parties stipulated to an updated phase-two discovery plan, which extended the discovery cutoff date to November 15, 2016, this update does not appear to extend the date of expert disclosures as it states, "time for expert disclosures had passed." ECF No. 190. The record does not show that the date of expert disclosures was ever altered or extended further.

On Oct. 14, 2016, the court held a status conference with the parties, during which discovery issues were discussed, including re-deposing plaintiffs. ECF No. 202. There is no indication that plaintiffs expressed a need or want to reopen the discovery deadline for expert disclosures even as the parties were stipulating to other extensions, including the date of filing dispositive motions.

The record is devoid of any mention of Toney until plaintiffs filed their responses to defendants' initial motions for summary judgment (ECF Nos. 228-233) on August 31, 2017—over one year after the Stipulated Updated Phase Two Discovery Plan and Scheduling Order was entered. While these motions were dismissed following the court's order granting plaintiffs' motion to reconsider, and were not decided on the merits, plaintiffs have been aware of this disclosure issue since September 25, 2017, when defendants filed their replies to plaintiffs'

initial responses. *See* ECF Nos. 236-241. However, plaintiffs made no attempt to re-open the expert disclosure deadline or rectify their error.

From this record, it is clear that plaintiffs' failure to provide the defendants with this expert disclosure was a violation of the federal discovery rules. First, plaintiffs failed in their April 22, 2015, disclosure to follow the federal rules. In providing the 1-page reports, plaintiffs failed to provide any indication to defendants that these reports were authored by an expert plaintiffs intended to use as a witness, or any author at all. These 1-page reports fail to provide defendants with any information as to how the author made these calculations or the data the author relied on in coming to his or her conclusions. This disclosure further failed to provide any of the other information required for expert reports: it failed to list the author's qualifications; it failed to provide a list of prior cases for which the author had provided similar expert testimony; and it failed to include a statement of the compensation the author was receiving for performing these calculations. In short, the April 22, 2015, disclosure is woefully inadequate and completely fails to comply with the expert disclosure requirements of Rule 26.

Additionally, when plaintiffs finally did disclose Toney and presented his declaration and calculations in their responses to defendants' motions for summary judgment, they further failed to comply with Rule 26. *See* ECF Nos. 266-3; 267-5; 268-4; 269-3; 270-2; 271-2. Toney's declarations provide his education and business experience that qualifies him to provide expert calculations in employment cases. Attached to each declaration appears to be the data Toney relied on to come to his calculations, specifically, plaintiffs' records for swiping onto and out of the property and their clock-in/out times. Toney then provides an example calculation for how he came to his overall conclusion. While his declarations state that he has "provided data analysis and damage exposure in over 400 cases," plaintiffs fail to include a list of any cases in which Toney testified over the previous 4 years. Additionally, while the declarations are signed by Toney, plaintiffs fail to provide any information regarding his compensation as an expert witness in this case. Therefore, even if the court were to overlook plaintiffs' prior failure to timely disclose Toney as an expert prior to the expert witness discovery cut-off as required by the stipulation, the court cannot find his declarations sufficient to meet the disclosure requirements.

Pursuant to Rule 37, because plaintiffs failed to provide the required information and properly identify Toney as an expert witness as required by Rule 26, the court must exclude that evidence when deciding these pending motions, and all subsequent issues in this case, unless the plaintiffs' failure was substantially justified or harmless. Plaintiffs have provided no explanation as to this failure or any reason why such disclosure violation was justified or harmless. Further, plaintiffs have had ample time to attempt to correct the error, but instead, chose to do nothing. Finally, plaintiffs did not fail to meet this discovery deadline by a short time—they failed to meet this deadline by over a year without any explanation. Their failure continues to date. *See* ECF No. 288.

Because the court can find no reason why such disclosure error was justified or harmless, especially given plaintiffs' continued failure to even attempt to rectify the situation, the court excludes plaintiffs' expert James Toney. Accordingly, the court will not consider his declaration or calculations in any way in coming to its decision regarding these pending motions. Should this case proceed to trial, the court excludes Toney's testimony and any mention of his calculations.

**D. Whether the Collective Bargaining Agreement ("CBA") is valid is a question of fact for the jury.**

Defendants argue that plaintiffs Wiederholt and Boggs were covered by a CBA, and thus, their wage and overtime claims are barred. In support, defendants submitted a copy of the CBA that is "redlined," (portions are stricken and added portions appear in track changes), and it is unsigned. ECF No. 259, Exhibit A. Defendants' also provide the declaration of Larry Montorose, current Human Resources Director for GSR, who states that the CBA was valid. ECF No. 259.

Plaintiffs, in opposition, argue that the CBA was not valid. In support for their argument, plaintiffs provide a signed copy of the 2010 CBA, between Worklife Financial Inc., dba Grand Sierra Resort and Casino and Culinary Workers Union Local 226. ECF Nos. 266-11; 269-4. Plaintiffs argue that the CBA was no longer valid because the property was sold after the CBA was in effect, and the CBA specifically provided that "[i]f the Employer sells the property . . . the CBA will remain in effect (30) Days after the property sale closes, unless either party has already given Notice, and the Union or the buyer may seek to immediately confer with respect to when,

where, and how new negotiations will begin." *Id.* Plaintiffs also present the deposition testimony of plaintiff Boggs who testified that the CBA was not valid and that the union had been disbanded. ECF No. 266-2 at 19. While plaintiff Wiederholt testified that she was a member of a union, she could not remember the name of it and did not provide the time frame for which she was a member. ECF No. 269-2 at 5.

The record provides that both parties have presented substantially conflicting evidence on this issue. Thus, the court finds there is an issue of fact as to whether the CBA was valid. Because whether the CBA was valid during plaintiffs Boggs' and Wiederholt's employment will affect the outcome of their wage and overtime claims, the court finds this a genuine dispute as to a material fact. Therefore, to the extent defendants' motions for summary judgment rely on this argument, they fail.

**E. Plaintiffs have established their claims for overtime under FLSA, 29 U.S.C. § 207.**

Under FLSA, to qualify for overtime, the employee must have worked more than 40 hours in a work week, unless the employee "receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a)(1). "To prevail on an unpaid overtime claim under the FLSA, the plaintiff must prove four elements: (1) the uncompensated activity constitutes 'work,' (2) the time worked is not *de minimis* and is reasonable in relation to the principal activity, (3) the employer had actual or constructive knowledge of the plaintiff's overtime work, and (4) the amount of time worked." *Marshall v. Pollin Hotels II, LLC*, 170 F. Supp.3d, 1290, 1297 (D. Or. 2016); *see also Dixon*, 2009 WL 1459447, at *3-6; *Adams v. United States*, 471 F.3d 1321, 1326 (Fed. Cir. 2006). It is the employee's burden of proving he or she was not properly compensated. *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998).

First, in assessing these four elements, the court must consider what constitutes "work." "[T]he Supreme Court has long noted, [work] is physical or mental exertion (whether burdensome or not) *controlled or required by the employer* and pursued necessarily and primarily for the benefit of the employer." *Bamonte v. City of Mesa*, 598 F.3d 1217, 1221 (9th Cir. 2010) (internal quotation marks omitted) (emphasis in original). "The Portal-to-Portal Act of

1947 relieves an employer of responsibility for compensating employees for activities which are preliminary or postliminary to the principal activity or activities of a given job." *Id.* The Ninth Circuit has determined that "[e]ven activities required by the employer and for the employer's benefit are 'preliminary' or 'postliminary' if not integral and indispensable to 'the productive work that the employee is *employed to perform*.'" *Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1101 (9th Cir. 2015) (quoting *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 519 (2014) (emphasis in original)). Further, "[a]n activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* (internal quotation marks omitted).

"Whether a certain employee 'worked' as defined in the FLSA is a factual determination." *Rite of Passage*, 2015 WL 9484735, at *1. The plaintiffs have all presented deposition testimony that they were completing activities before clocking-in and after clocking-out, which they argue are integral and indispensable to their work. These activities include retrieving banks, radios, and iTouches; employee meetings; cleaning; and completing administrative tasks like paperwork and phone calls. Whether these activities constitute work that is integral and indispensable is a factual determination to be made by the jury at trial, and is therefore inappropriate for summary judgment.

Second, employers "must compensate employees for even small amounts of daily time unless that time is so miniscule that it cannot, as an administrative matter, be recorded for payroll purposes." *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984). While courts have generally "found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable," in making this determination, courts must consider (1) "the practical administrative difficulty of recording small amounts of time for payroll purposes;" (2) "the size of the aggregate claim;" and (3) "whether the claimants performed the work on a regular basis." *Id.*

///

Here, plaintiffs alleged that they were working between 5 minutes to over 1 hour prior to clocking-in and after clocking-out, that it was a simple clock-in/out system, and that they were completing these off-clock tasks before and after every shift. From the testimony of plaintiffs, it is clear to the court that how much time a plaintiff spent working prior to or after his or her assigned shift, whether the time spent was practically so small that it was administratively impossible to account for the work, and whether the work was not completed before and after every shift, are factual determinations best suited to the jury. Further, as these questions of fact are material to plaintiffs' overtime claims, it would be inappropriate for the court to decide such issues on summary judgment.

Third, "an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of § 207." *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). Further "[a]n employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Id.*

Here, plaintiffs have alleged that defendants knew employees were working overtime because supervisors were instructed to "write-up" employees for working overtime, that employees were instructed by supervisors to clock-out at the end of 8-hours and continue working, and/or complete tasks prior to clocking-in. Defendants argue that where an "employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Id.* Defendants argue that because plaintiffs failed to account on their time cards from this alleged overtime, they were deliberately preventing defendants from knowing, and thus, defendants could not have violated section 207. While the court agrees with defendants on the law, there is clearly a dispute of material fact as to whether defendants knew or should have known plaintiffs were working overtime, or whether plaintiffs deliberately failed to inform defendants of such. Therefore, any determination of this issue on summary judgment is improper.

Finally, plaintiffs must prove the total amount worked. Defendants argue that because they kept adequate records, plaintiffs cannot prove the total amount worked. While the court has previously excluded plaintiffs' expert James Toney, plaintiffs have also presented their own testimony as to the amount of time each of them worked off the clock in disputing defendants' records. The court therefore also finds there is a dispute as to this material fact. Accordingly, because all elements contain material factual allegations in dispute, defendants' motions for summary judgment on plaintiffs' second cause of action are denied.

### F. Plaintiffs have established their claims for overtime under NRS §§ 608.018(2) and 608.140.

Under NRS § 608.018, employers must pay 1 1/2 times an employee's regular wage rate if the employee works more than 40 hours in any scheduled week. Additionally, if an employee "receives compensation for employment at a rate of less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250," and works more than 8 hours in any workday, employers must also pay the employee 1 1/2 times the employee's regular wage rate, unless otherwise provided.

This statute, recently revised, is intended to track federal law. *See Csomos v. Venetian Casino Resort, LLC*, No. 55913,381 P.3d 605, 2012 WL 642460, at *3 (Nev. Feb. 24, 2012) (unpublished) ("the Nevada Legislature intended to track federal law beginning in 2005."). The court has previously held that Nevada law "follows the same requirements as the FLSA for overtime compensation claims." *See Kariuki v. Shac, LLC*, Case No. 2:14-cv-1118 JCM (CWH), 2016 WL6069927, at *5 (D. Nev. Oct. 10, 2016). Given that the FLSA has frequently supplied the standard to be used with Nevada wage claims, the court sees no reason to deviate. *See Terry*, 336 P.3d at 958 ("We therefore adopt the FLSA's 'economic realities' test for employment in the context of Nevada's minimum wage laws."); *Rite of Passage*, 2015 WL 9484735, at *1 ("As Nevada law provides little guidance on this issue, we turn to the federal courts' interpretation of hours worked under the federal Fair Labor Standards Act."); *Nye v. Burberry Ltd.*, Case No. 2:16-cv-00702-RFB-CWH, 2017 WL 1228408, at *2 (D. Nev. April 3, 2017) ("the Nevada

Supreme Court has recently held that when no Nevada law is on point regarding wage laws, courts look to the federal standard for guidance.").

Accordingly, the court finds, for the same reasoning articulated above, that genuine issues of material facts exist as to plaintiffs' stated overtime claims. Therefore, the court denies defendants' motions for summary judgment as to plaintiffs' sixth cause of action.

**G. Plaintiffs have established their Minimum Wage Claims under the Minimum Wage Amendment (MWA), art. XV, § 16, to the Nevada Constitution and NRS § 608.250.**

Under the MWA, "[e]ach employer shall pay a wage to each employee of not less than the hourly rates set forth."[2] Nev. Const., art. XV, § 16. Courts considering Nevada State law wage claims have frequently considered them through the lens of the FLSA. *See e.g. Terry*, 336 P.3d at 958 (the Nevada Supreme Court adopted the FLSA's economic realities test for employment in the context of Nevada's minimum wage laws); *Johnson v. Pink Spot Vapors Inc.*, Case No. 2:14-cv-1960 JCM (GWF), 2015 WL 433503, at *6 (D. Nev. Feb. 3, 2015) ("Since the same facts apply to the alleged minimum wage violation, he also satisfies the pleading standard of his NRS § 608.250 claim.").

As discussed above, Plaintiffs have provided sufficient evidence that the court finds there are material facts in dispute, such that summary judgment is not appropriate. Plaintiffs rely on the same evidence to establish their FLSA claims; specifically, plaintiffs' testimony that prior to clocking-in and after clocking-out they were working, that this occurred before and after every shift worked, and that they were not paid a wage for this work. Because whether plaintiffs were "working" during the alleged periods prior to clocking-in and after clocking-out is a question for the jury, defendants' motions for summary judgment as to plaintiffs' fifth cause of action are denied.

///

///

///

---

[2] The minimum wage in Nevada is $8.25 per hour; $7.25 per hour if employers provide health benefits. *See* Office of the Labor Commissioner, State of Nevada Department of Business & Industry, http://labor.nv.gov/Wages/Minimum_Wage_Bulletins/.

**H. Plaintiffs Wiederholt and Boggs have established their claims for Age Discrimination under 29 U.S.C. § 621 *et. seq.* and NRS § 613.330.**

Under the ADEA, it is unlawful "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). For a motion for summary judgment, the court will evaluate claims under this statute using a "threestage burden-shifting framework:" first, the employee must "establish a prima facie case of age discrimination;" second, "[i]f the employee has justified a presumption of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action;" and third, "if the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008). "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. Of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000).

     i.    <u>Wiederholt and Boggs have established their *prima facie* cases.</u>

To prove a *prima facie* case of age discrimination, a plaintiff must show that: (1) she was at least forty years old; (2) she was performing the job satisfactorily; (3) she was discharged; and (4) she was "either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Diaz*, 521 F.3d at 1207 (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). "The requisite degree of proof necessary to establish a *prima facie* case for Title VII and ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). In accordance with Federal Rule of Civil Procedure 56, the court must evaluate the evidence in the light most favorable to the plaintiffs. *Chuang*, 225 F.3d at 1124.

It is undisputed that both plaintiffs Wiederholt and Boggs are over forty years old and were discharged by defendants. What is in dispute is whether either plaintiff was performing their job satisfactorily or if they were replaced by a substantially younger employee with equal or

inferior qualifications or discharged under circumstances giving rise to an inference of age discrimination. The court finds that plaintiffs Widerholt and Boggs have presented sufficent evidence to establish their *prima facie* case.

First, plaintiffs have presented sufficient evidence to establish that they were completing their jobs satisfactorily. Plaintiff Wiederholt testified that she worked as a slot attendant for 27 years. Though during the period leading up to her termination she received disciplinary warnings, write-ups, and low evaluation scores, prior to 2012, it appears from the record that she was a satisfactory employee. ECF No.269-2 at 3-4. Wiederholt testified that she may have had a few "write-ups" in 2006, but she never saw nor signed them. ECF No. 269-2 at 4. Plaintiff Boggs testified that she had worked on the property for 24 years, primarily as a slot attendant. ECF No. 266-2 at 3. She also testified that prior to the new owners purchasing the property, she was a satisfactory employee, incurring one disciplinary action in which she was suspended for 1 day.

Considering this evidence in the light most favorable to the plaintiffs, the court finds that a reasonable jury could find that Wiederholt and Boggs were performing their jobs satisfactorily. Plaintiffs evidence shows that prior to their terminations, both employees' 20-year plus employment history was relatively free of disciplinary issues. It is also clear from the record that due to their lengthy tenure as slot attendants, they both possessed the required training and experience for the position. *See Decker v. Barrick Goldstrike Mines, Inc.*, 645 Fed. Appx. 565, 567 (9th Cir. 2016) (After "Decker introduced evidence showing that aside from a small number of safety violations, his eighteen-year tenure with Barrick was unblemished," and that it was "undisputed that he possessed the requisite training, experience, and knowledge to perform the job satisfactorily," the Court concluded this was "a sufficient prima facie showing of qualification to survive summary judgment."). Given that the showing required to meet the *prima facie* standard is quite minimal, the court finds both plaintiffs showed they were performing their jobs satisfactorily. *See Wallis*, 26 F.3d at 889 (explaining that the degree of proof needed for a *prima facie* showing "does not even need to rise to the level of a preponderance of the evidence.").

///

Second, the court considers whether plaintiffs have shown they were replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances giving rise to an inference of age discrimination. "An inference of discrimination can be established by 'showing the employer had a continuing need for [the employees'] skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably.'" *Diaz*, 521 F.3d at 1207 (quoting *Coleman*, 232 F.3d at 1281). Based on the circumstantial evidence plaintiffs presented, the court finds that there is a triable issue of fact as to this *prima facie* element.

Plaintiff Wiederholt testified that following her termination, three college students were hired in her place. She testified that she both heard this information from her former colleagues, and she saw the students working when she returned to the property following her termination. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

Plaintiffs Wiederholt and Boggs also presented the declaration of Ann Woodhouse, Assistant to the Vice President of Human Resources. Woodhouse declared that she was directed by her supervisor to create a list of employees 65 years or older, and that shortly after, the people on the list were terminated. ECF Nos. 266-9 ¶ 21; 269-9. While neither Wiederholt nor Boogs were on the list generated by Woodhouse and neither were fired at that time, plaintiffs argue this testimony shows an inference that the "upstairs executives" were systematically terminating older employees. Defendants argue that is false because defendants continue to employ individuals 65 years and older, and because at the time of plaintiffs' termination, the slot department employed 18 slot attendants that were in the protected class. *See* ECF No 285. Defendants also argue that there is no inference of discrimination because Lovig and Brock— slot attendant supervisors—were also in the protected class (ages 55 and 63 respectively). *See* ECF Nos. 284. Based on this conflicting evidence, a triable fact exists. Therefore, viewed in the

light most favorable to plaintiffs, the court finds plaintiffs have established their *prima facie* case.

      ii.    <u>Defendants have adequately presented nondiscriminatory reasons for plaintiffs' termination.</u>

Because plaintiffs have established their *prima facie* case, the court now looks to whether the defendants have provided nondiscriminatory reasons for plaintiffs' terminations. The court will discuss the evidence presented as to each plaintiff separately.

      a.    <u>Defendants presented evidence of nondiscriminatory reasons that Boggs was terminated.</u>

The defendants presented the following evidence regarding Boggs' performance to prove she was terminated for a nondiscriminatory purpose:

- Defendants present Boggs' Slot Stars Evaluations, which show she frequently failed to introduce herself to guests and greet guests by their names. Boggs knew this was required of her: defendants presented a signed acknowledgment that she would be evaluated by the Slot Stars standards. This failure led her to receive 2 failing scores (70% or less) out of 11 Slot Stars evaluations. ECF No. 221, Exhibit B.

- Defendants monitor slot attendants' response times to certain events, including service lights and jackpots. Lovig's declaration states: "Boggs did not meet standards for the number of events and response times, which led to her being placed on an Employee Development Plan in May 2013." *Id.* ¶ 10.

- This Employee Development Plan required that she improve her "Star Shops" evaluations, number of events, and her communications. If improvement did not occur within 60 days, there would be further discipline, including suspension and or termination. *Id.*, Exhibit E.

- On June 4, 2013, Boggs was issued an Employee Development Plan follow up. It stated "Rosie has shown moderate improvement in this area, but needs to hit all the marks every time. Rosie's number of events for her shift in May are at the average for jackpots, but below in events. . . . Improvement in communication has been noted." *Id.*, Exhibit F.

- On July 6, 2013, Boggs was issued a Development Plan Final. It stated that she scored 100% on all 4 Star Shops that were done. However, her number of events for service lights was below average, and her average response time for service lights and jackpots were below average. It also noted that while her communication had improved, on June 21, she had failed to "notify the floor manager that she was in the restroom prior to starting her shift on the casino floor." It then found "Rosie has not met the standards necessary to successfully complete her development plan. Termination is warranted." *Id.*, Exhibit J.

- Defendants also presented 5 documented incidents of verbal coaching. *Id.*, Exhibits D, I. And one Performance Improvement Notice from December 14, 2012, which states "Rosie needs [sic] respect her fellow Employees and Managers. Making derogatory comments about management will not be tolerated. Rosie is expected to conduct herself professionally at all times. Further events of this nature will result in progressive disciplinary action up to termination." *Id.*, Exhibit D. This notice was signed by Boggs and is checked as a Final Written Warning.

From the above evidence, it is clear that defendants had nondiscriminatory reasons for terminating Boggs. The evidence shows she had trouble adhering to the policies of slot attendants. She was put on an Employee Development Plan, during which time management determined she failed to improve in the required areas. The evidence shows numerous times she was verbally coached by management; however, she still did not improve to the level management required and she was terminated. This evidence supports defendants' position that Boggs was terminated for nondiscriminatory reasons.

   b. <u>The court agrees that the defendants presented evidence of nondiscriminatory reasons that Wiederholt was terminated.</u>

The defendants presented the following evidence regarding Boggs' performance to prove she was terminated for a nondiscriminatory purpose:

- Wiederholt does not dispute that she was told many times that "she needed to keep a closer eye on her section, be more aware of what was going on in her section, and needed to respond to radio calls." She also does not dispute that she was "coached" on these issues. *See* ECF No. 231 at 4; ECF No. 219, Exhibit B.

- On October 2, 2012, Wiederholt was verbally coached on the necessity of her earpiece staying in her ear at all times. This coaching event was due to complaints by other employees that they called her on the radio but were unable to reach her. ECF No. 219, Exhibit C.

- Defendants provided that Wiederholt was verbally coached on the importance of answering radio calls, as she had failed to respond 3 times. *Id.*, Exhibit B.

- Wiederholt testified that was given a warning and counseled by Lovig regarding keeping her iTouch charged and properly working. Wiederholt agrees she signed this written coaching document. ECF No. 269-2 at 10.

- On October 22, 2012, Wiederholt overpaid a jackpot by $200, and the miscount was caught by her supervisor, Bounds, and the customer. During the event she also took out her earpiece. Following the incident, she was verbally coached by Bounds on the importance of never taking out her earpiece and verifying the count. ECF No. 219, Exhibit D.

- On October 23, 2012, Wiederholt was verbally coached after she printed a W2G form with the wrong JP number. She was verbally coached and advised to be more careful in the future. *Id.*, Exhibit E.

- On November 26, 2012, Wiederholt was given a Performance Improvement Notice after it took her 27 minutes to respond to a jackpot; defendants maintain a goal of 2 minutes or faster response times for jackpots. This was given as a written warning indicating that further errors will result in more "progressive disciplinary actions up to termination." *Id.*, Exhibit G.

- On November 28, 2012, Wiederholt was given a Performance Improvement Notice after she "left $5,976 in bills on the table in the fill bank for 3 minutes while she went to retrieve the rest of her bank." This notice is listed as a Final Warning. *Id.*, Exhibit H.

- On December 26, 2012, Wiederholt was placed on an Employee Development Plan, which required her to improve her sense of urgency, service time reports, and communication. *Id.*, Exhibit J.

- On February 1, 2013, Wiederholt was issued a Development Plan follow up. This indicated that her average Star Shops evaluation score was 80; however, one was a "60 which is a written warning." *See Id.*, Exhibit L. Her average response time is near the average response time for her shift, but her number of jackpots is low. "Her response times must improve by at least 20% in February." She received an overall score of 79, but must receive at least an 80 or above by the end of the development plan. *Id.*, Exhibit M.

- On February 10, 2013, Wiederholt was issued a Performance Improvement Notice after she radioed that she would respond to a jackpot and then never did. She was then placed on an investigatory suspension. *Id.*, Exhibit N. She was then discharged on February 12, 2013. *Id.*, Exhibit O.

From the above evidence, it is clear to the court that defendants had nondiscriminatory reasons for terminating Wiederholt. The evidence shows she had trouble adhering to the policies of slot attendants. She was put on an Employee Development Plan, during which time management determined she failed to improve in the required areas, and she continued to incur written warnings. The evidence shows numerous times she was verbally coached by management; however, she still did not improve to the level management required and she was terminated. Not unlike Boggs' termination, this evidence supports defendants' position that Wiederholt was terminated for nondiscriminatory reasons.

    iii.   <u>Defendants' nondiscriminatory reasons were mere pretext is a triable issue of fact for the jury.</u>

Finally, because defendants have shown nondiscriminatory reasons for terminating plaintiffs, the court now turns to part three of the burden-shifting analysis: whether plaintiffs

have raised "a genuine issue of fact concerning whether the facially legitimate reasons proffered by [defendants] are pretextual." Diaz, 521 F.3d at 1212. The Ninth Circuit has articulated two ways a plaintiff can persuade the court that she was a victim of intentional discrimination: "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093-94 (9th Cir. 2001) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Chuang*, 225 F.3d at 1127. The court finds plaintiffs have presented evidence such that a genuine issue of material fact exists as to whether defendants' proffered reasons for plaintiffs' terminations constitute pretext.

First, Plaintiff Wiederholt disputed the nondiscriminatory reasons defendants rely upon: (1) she claims that while sometimes her earpiece would fall out, it was not a frequent problem; (2) she disputes that she overpaid a customer $200, but rather realized her mistake and fixed it;[3] (3) she claims she was not told it was a violation of policy to have a cage cashier watch her bank; (4) she claims that her response times were longer and jackpots were fewer than average due to the shift she worked; (5) she disputes that she failed to respond to a jackpot for 27 minutes because she claims it was not her jackpot; (6) she claims she couldn't always get to customers within the required 2 minutes because she was with customers; and (7) she disputes ever being shown or notified of the written coaching documents in her personnel file. *See* ECF No. 269-2.

Plaintiff Boggs also disputes the nondiscriminatory reasons provided by defendant. She testified that she believed the increase in disciplinary warnings she received were because "GSR wanted all the young employees to be on the floor of their business." ECF No. 266-2 at 3. In support, Boggs presents Woodhouse's declaration, in which she states that during "weekly meetings the management discussed the ability of older workers to meet response times and meet

---

[3] The court would note that from the defendants' evidence, this event appears to be different from when Wiederholt made an error on a W2G form; however, from plaintiff's testimony, it appears to be a single event.

physical requirements to see if they could 'keep up.'" ECF Nos. 266-9 ¶ 22; 269-9. During her deposition, Boggs, similarly to Wiederholt, testified that she had never seen the verbal coaching documents or her Star Shop evaluations. *See id.* Boggs also disputes that she made disparaging comments about management, testifying that she said, "he might not like me." ECF No. 266-2 at 17.

Third, as discussed previously, both plaintiffs testified that they had received very few disciplinary warnings or write-ups until shortly before their terminations, even though both were employed for more than 20 years. Both plaintiffs also rely on Woodhouse's testimony in which she indicates that defendants asked her to compile a list of employees 65 years and older, who were subsequently terminated. ECF Nos. 266-9 ¶ 21; 269-9.

From the record, it is clear that a triable question of fact exists as to whether defendants' nondiscriminatory reasons were mere pretext. Accordingly, the court denies defendants motions for summary judgment as to plaintiffs' ninth cause of action brought pursuant to federal law.

      iv.   Plaintiffs have also established their claims for Age Discrimination under NRS § 613.330.

Under NRS § 613.330, it is unlawful to discharge an employee because of her age. Due to the similarity between federal and state discrimination statutes, the court considers the Nevada state claim in accordance with federal law. *See Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("we have previously looked to the federal courts for guidance in discrimination cases."); *Liston v. Las Vegas Metro. Police Dep't*, 908 P.2d 720, 721 n.2 (Nev. 1995) ("The action was brought pursuant to NRS 613.330, Discrimination on the Basis of Age, which is based on 29 U.S.C. § 626(b) (1967), the Age Discrimination and Employment Act (ADEA)."); *Apeceche v. White Pine County*, 615 P.2d 975, 977 (Nev. 1980) ("NRS 613.330(1) is almost identical to § 703 of Title VII of the Civil Rights Act of 1964."). Further, Nevada Courts use the same burden-shifting analysis as federal courts. *See Apeceche*, 615 P.2d at 977-78 ("Once a prima facie case of discrimination is established, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions.").

///

As articulated fully above, plaintiffs have established their *prima facie* case. Additionally, plaintiffs have successfully raised a genuine issue of material fact as to whether defendants proffered facially nondiscriminatory reasons were mere pretext. Summary judgment is therefore inappropriate on this issue. Accordingly, the court also denies defendants' motions for summary judgment as to plaintiffs' ninth cause of action brought pursuant to state law.

## I. Plaintiffs have established their claims for penalties under NRS §608.020-.050.

Pursuant to NRS §§ 608.040 and 608.050, employers failing to pay timely wages due may be required to pay the employee up to 30 days wages as a penalty. Success of plaintiffs' claims under NRS §§ 608.020-.050 depend on the success of defendants underlying wage claims. *See Lucas v. Bell Trans.*, Case No. 2:08-cv-01792-GMN-RJJ, 2011 WL 5877467, at *11 (D. Nev. Nov. 22, 2011) ("The parties agree that the success of Plaintiffs' claim for violations of NRS 608.040 depends on whether violations of NRS 608.016 exist."). Here, the court has found that plaintiffs' wage claims survive summary judgment. Therefore, the award of penalties is not barred.

Defendants however also argue that plaintiffs' claim for penalties must fail because any failure of defendants to pay wages owed was in good faith. Defendants rely on Nevada Supreme Court decision *Feldman v. State of Nevada* in support. There, the Court affirmed a lower court's finding that the penalty, revocation of a license, was an "unduly harsh and unjustified penalty under the circumstances." *Feldman*, 615 P.2d 238, 241-42 (Nev. 1980) (reasoning that "[a]lthough there is no doubt that Feldman 'willfully' violated NRS 686A.230, he was not devious or dishonest about the fee with either the division or the customers.") (internal citations and quotation marks omitted). The court finds defendants' reliance on *Feldman* is inapposite. This is not an issue of a license revocation, but a penalty for failure to pay wages—a penalty specifically provided for by statute. Further, nothing within NRS §§ 608.020 to 608.050, nor the case law, leads this court to believe a good faith exception applies. Accordingly, the court declines to read a good faith exception into a statute where none appears.

Finally, defendants argue plaintiffs' claim for penalties fails because the plaintiffs did not complain about the lack of compensation at the time, and therefore, waived the claim. However,

the case law cited by defendants in support of this argument is not appropriately analogous to the case at hand. *See Summa Corp. v. Richardson*, 564 P.2d 181, 185 (Nev. 1977) (discussing that when a lessor accepts "rents with no expression of intent to stand on any legal rights," and made no demand of lessee, this conduct "waived any right to assert forfeiture" for the lessee's infractions); *United Brotherhood of Carpenters & Joiners of America, Local No. 1780 v. Dahnke*, 714 P.2d 177, 179 (Nev. 1986) ("because Dahnke continued to serve in dual positions [for 2 years] with a settled expectancy of a single salary with no overtime pay and voluntarily returned to employment under the same conditions after this dispute arose, he waived his right to assert these claims."). Rather, the case law supports a finding that acceptance of a check issued for wages alone does not constitute waiver of subsequent claims. *See Lewis v. Casa Di Amore, LLC*, Case No 2:15-cv-01368-RFB-PAL, 2018 WL 4031605, at *6 (D. Nev. Aug. 23, 2018) (the court refused to find Lewis' acceptance of checks issued to her indicated her agreement with the Settlement Agreement, and "therefore, her acceptance [did] not constitute waiver of all unpaid wages and overtime claims, pursuant to 29 U.S.C. § 216(c).").

Nothing in the record indicates that plaintiffs signed anything or agreed that acceptance of their paychecks waived their right to claims for unpaid wages or penalties. Because a plain reading of the statute and the case law do not support this reasoning, the court finds that plaintiffs' acceptance of their paychecks did not constitute waiver of their subsequent claims for penalties. Accordingly, defendants' motions for summary judgment as to plaintiffs' seventh cause of action are denied.

**J. Plaintiffs are not entitled to attorneys' fees under NRS § 608.140.**

Under NRS § 608.140, attorneys' fees may be awarded if "a demand has been made, in writing, at least 5 days before the suit is brought, for a sum not to exceed the amount so found due." Under the statute, seeking recovery for "certain monies then due and owing" is an inadequate demand as that provides "no basis for the required determination by the court that the demand was for wages, in a sum which did not exceed the amount found by the jury." *Air Service Co. v. Sheehan*, 594 P.2d 1155, 1156 (Nev. 1979).

///

Here, plaintiffs Sargent and Cryderman, the initial plaintiffs in this action, sent a demand letter to defendants, stating "[p]ursuant to Nevada Revised Statute Section 608.140, demand is hereby made for payment within five days for unpaid wages due and owing under Nevada wage and hour law." ECF No. 266-8. No further demand letter was sent to defendants prior to joining the additional named plaintiffs to the action. Similar to the demand letter in *Air Services*, this demand provides the court with no sum: should the jury make an award in this case, the court would be left with no basis on which to make the statutorily required determination that the demand was for a sum which did not exceed the amount found by the jury. As the additional plaintiffs also made no demand, and it is clear that the underlying demand made by plaintiffs Sargent and Cryderman is insufficient, the court finds plaintiffs are not entitled to attorneys' fees under NRS § 608.140.

**K. Plaintiffs are not entitled to pre-judgment interest under NRS § 99.040.**

"Pursuant to NRS § 99.040(1)(d), when there is no contract establishing an interest rate, a plaintiff is entitled to interest 'upon wages or salary, if it is unpaid when due, after demand therefore has been made.'" *Lewis*, 2018 WL 403160512, at *4 (quoting NRS § 99.040(1)(d)). In *Lewis*, the plaintiff properly submitted her written demand, and therefore, the court found she was entitled to both attorneys' fees under NRS § 608.140 and interest on her unpaid wages under NRS § 99.040. *Id.* In contrast and as discussed above, in this case, plaintiffs failed to make a sufficient demand and therefore, are not entitled to attorneys' fees under NRS § 608.140. Accordingly, because they have failed to make a sufficient demand, plaintiffs are also not entitled to prejudgment interest under NRS § 99.040.

**IV. CONCLUSIONS**

IT IS THEREFORE ORDERED that defendants' motion for summary judgment as to Tiffany Sargent (ECF No. 253) is **DENIED**.

IT IS FURTHER ORDERED that defendants' motion for summary judgment as to Bailey Cryderman (ECF No. 258) is **DENIED**.

IT IS FURTHER ORDERED that defendants' motion for summary judgment as to Jacqulyn Wiederholt (ECF No. 255) is **GRANTED in part** and **DENIED in part** in accordance

with this Order. This motion is granted in part as to Wiederholt's fifth cause of action regarding her claim for failure to pay minimum wage for any claimed unpaid wages incurred <u>prior</u> to September 16, 2011. The motion is denied as to all other aspects.

IT IS FURTHER ORDERED that defendants' motion for summary judgment as to Huong "Rosie" Boggs (ECF No. 254) is **GRANTED in part** and **DENIED in part** in accordance with this Order. This motion is granted in part as to Boggs's fifth cause of action regarding her claim for failure to pay minimum wage for any claimed unpaid wages incurred <u>prior</u> to September 16, 2011. The motion is denied as to all other aspects.

IT IS FURTHER ORDERED that defendants' motion for summary judgment as to Vincent Ignacio (ECF No. 256) is **DENIED**.

IT IS FURTHER ORDERED that defendants' motion for summary judgment as to Samantha Ignacio (ECF No. 257) is **DENIED**.

IT IS FURTHER ORDERED that parties shall submit a proposed joint pretrial order in compliance with Local Rules 16-3 and 16-4 within 45 days of the date of this order.


IT IS SO ORDERED.

DATED this 8th day of March, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE